Marshall, C. J.
 

 Permanent leaseholds have become so numerous in all the large cities of Ohio that the question is one of tremendous public interest, yet that fact has no bearing upon the legal questions involved. The legal question is purely one of statutory interpretation. Dower is a creature of statute and the controversy therefore turns
 
 *308
 
 upon the meaning and intent of Section 8606, General Code:
 

 “A widow or widower, who has not relinquished or been barred of it, shall be endowed of an estate for life in one-third of all the real property of .which the deceased consort was seized as an estate of inheritance at any time during the marriage, in one-third ‘of all the real property of which the deceased consort, at decease, held the fee simple in reversion dr remaindeiQiind in one-third of all the title — orinterest that the" deceased consort had, at decease, in Any real property held by article, bond, or other evidence of claim.”
 

 It will be seen that this section is divisible into three separate and distinct provisions. It is conceded that the second provision has no relation to the facts of this controversy. It is claimed by counsel for Mrs. Ralston that she is entitled to dower by virtue of both the first and third provisions. It is contended by counsel for creditors that she is not entitled to dower by virtue of either or any of the provisions of that section. We will discuss the two provisions in their order.
 

 (As to the first provision, it is conceded that Ralston was seized of the permanent leasehold at the time of his death and the inquiry relative to the first provision is whether' such a permanent leasehold is real property, and, if so, whether it is an estate of inheritance. It is provided by Section 8597, General Code:
 

 “Permanent leasehold estates, renewable forever, shall be subject to the same law of descent as estates in fee are subject to by the provisions of this chanter.”
 

 
 *309
 
 This statute is
 
 in pari materia
 
 and leaves no doubt that a permanent leasehold' is an estate of inheritance. This is not decisive of the case, however, because, by virtue of the provision now under consideration, it can only apply to “real property.” It follows, therefore, that a permanent leasehold, to be subject to dower under the first provision of the section, must be real property.
 

 It is important in this connection to inquire more minutely into the character of a permanent leasehold. A copy of the lease is not set forth in the record, but it will be assumed that it was of the usual form and contained the usual conditions of such instruments. The agreed statement of facts does show that the tenure was for 99 years, renewable forever. It was therefore as permanent as a fee-simple estate. By virtue of Section 8597 it descended to the heirs and was not subject to distribution. The grantee, Ralston, was required to pay all taxes, duties, rates, and assessments of every kind levied by the authorities of the federal, state, and municipal governments. He was also bound to keep the premises insured against loss by fire, tornado, or other casualty. In the event of destruction or damage he was bound to repair and renew the improvements, and to rebuild over and over again if necessary. In short, there is not a single liability which usually attaches to the owner of real estate which was not assumed and agreed I tc be discharged by Ralston, and, so long as all off tlie conditions, of the lease were faithfully observed,,; the only rights which the owner of the fee couldi lawfully claim were those of receiving the stipu-; lated rent and the further right to claim a for-1
 
 *310
 
 feiture in the event of nonperformance of the conditions, including the payment of rent.
 

 The usual and ordinary permanent lease contains an option of purchase clause, upon the exercise of which the grantee becomes invested with the full fee-simple title. It frequently happens that expensive improvements are erected by the grantee, and in cities where the general growth of the community is rapid and substantial the estate of the grantee becomes quite valuable, just as it has in the instant case, and it frequently happens that in the course of a few years the estate of the grantee becomes more valuable than that of the grantor.
 

 It should be further added that the usual and ordinary permanent lease runs for a term of 99 years, renewable forever, and such an instrument uniformly extends to the.heirs, successors, and assigns of the grantee. It is therefore not easy to ' see how the tenure under such an instrument differs from the tenure of a similar instrument which extends merely to the grantee, his heirs and as-' signs forever. The one is< neither more nor less 'permanent than the other. The mention of successive terms of 99' years each, renewable forever, such renewals to become effective, without any affirmative action on the part of the grantee, does not limit the perpetuity of the tenure, provided the conditions as to payment of rent and other covenants are faithfully observed. Some permanent leases are drawn' in one form and some in the other. Any effort to show that a permanent lease to the grantee, his heirs and assigns, forever, is a more permanent tenure than an instrument which mentions successive terms of 99' years, forever,
 
 *311
 
 must be upon refinements of reasoning which do not tend to promote substantial justice.
 

 If the foregoing reasoning is sound, the case of
 
 Stephenson
 
 v.
 
 Haines,
 
 16 Ohio St., 478, becomes a valuable aid in determining the issues of this controversy. That case involved a permanent leasehold containing the following habendum:
 

 “To have and to hold the said described piece of ground to the said Ephraim Carter, his heirs and assigns, forever, subject, nevertheless, to the payment and reservation of the following sums of money, to be paid on the several days hereinafter specified, to wit.”
 

 The payments amounted to $144 per year, payable quarterly, forever. In discussing this instrument, Welch, J., at page 486, observed:
 

 “Properly speaking, however, this is. no ‘lease.’ A
 
 term
 
 of years, and a
 
 reversion,
 
 seem indispensable to. the idea of a lease. If this is a lease, it is also much more. It is a deed of conveyance in fee, subject to a condition, of defeasance. Its legal effect is to pass to the grantee an estate in fee simple, subject to be defeated by the nonpayment of annuities, denominated in the instrument
 
 ‘rents mid
 
 chargesThe truth is — and it is impossible to shut our eyes to the fact — that the real transaction was a sale of the premises for $2,400, with a right to defer the payment of the principal sum, so long as the
 
 interest
 
 thereon should be paid quarter yearly; and a conveyance of the premises upon condition to be void in case of nonpayment. In other words, the transaction was equivalent to a sale and conveyance, with a mortgage to secure the payment of the purchase money. ’ ’ ,
 

 
 *312
 
 Much more appears in the brief opinion of Welch, J., and no sound reason is perceived why the same language is not equally applicable to a lease containing the habendum to the grantee, his heirs and assigns, for the period of 99 years and successive renewals of 99 years each, forever.
 

 The
 
 Stephenson case
 
 was decided in 1866. Three years later this court decided the case of
 
 Worthington
 
 v.
 
 Hewes & McCann,
 
 19 Ohio St., 66. The permanent lease involved in that controversy was in the more popular form of tenure, to wit, 99, years, renewable forever. Welch, J., at page 75 of the opinion, discusses the character of that form of permanent lease:
 

 “For all substantial purposes', it is a leasehold estate in name and in form only. The lessor, in effect, parts at once with his entire estate, for a stipulated consideration in money, payable-in specified installments, and secured by a
 
 lien
 
 upon the land; and the lessee takes the entire estate, an estate of inheritance, subject only to the payment of the money. In form merely is it a chattel; it is in fact an estate in fee. Is it not a mistake, then, to hold that such an estate is subject to all the incidents of an actual estate for a limited term of years? One by one it has been found necessary, at least in Ohio, to deny these incidents in their application to permanent leasehold titles.”
 

 In addition to these attributes of permanence, which are inherent in the contract itself, the Legislature of Ohio has added many qualities which attach to all permanent leases, and such statutes must be taken into consideration in determining the character of the estate of Joseph S. Ralston in
 
 *313
 
 the property described in the lease in the instant ease. The most important of these statutes is Section 8597, General Code, hereinbefore quoted. Next in importance is Section 11655, General Code, which provides:
 

 “Lands and tenements, including vested interests therein, permanent leasehold estates renewable forever, and goods and chattels, not exempt by law, .shall be subject to the payment of debts, and liable to be taken on execution and sold as hereinafter provided.”
 

 This statute has been in effect since 1821, and upon the authority of that statute it was decided by this court in 1844, in the case of
 
 Northern Bank of Ky.
 
 v.
 
 Roosca,
 
 13 Ohio, 334, that “judgments are liens, without levy for one year, on permanent leaseholds, as upon other' real estate. ’ ’
 

 It has also been decided by this, court in
 
 Village of St. Bernard
 
 v.
 
 Kemper,
 
 60 Ohio St., 244, 54 N. E., 267, 45 L. R. A., 662, that a lessee in possession under a permanent leasehold, the property standing in his name for taxation, is so far the owner of such property as to authorize him to subscribe a petition for street improvements.
 

 Section 5322, General Code, appearing under the title “Taxation,” defines the term “real property,” and that section has been so construed in the case of
 
 Cincinnati College
 
 v.
 
 Yeatman, Aud.,
 
 30 Ohio St., 276, as to include permanent leases and to require the grantee of such a lease to return the property covered thereby for taxation.
 

 Sections 8510, 8511, and 8517, General Code, require all instruments relating to real estate, for a term not less than three years, to be' executed
 
 *314
 
 with all the formalities of a deed conveying a fee-simple title.
 

 It is claimed, however, that these qualities which have been added by legislation-’ to the inherent qualities conferred upon permanent leases by the language of such instruments still fall short of giving such instruments the quality óf permanence necessary to make them real property. It is urged, that- the statutory provisions relating to descent)/ taxation, and conveyance should be- confined in their * application to those particular subjects, and should not be extended into the domain of dower. As we shall proceed hereafter to show, this rule of interpretation is so narrow and technical that it would defeat the purposes which' the Legislature has undoubtedly designed to serve.
 

 Much of the law of real property of this present period is the outgrowth of principles established in England during the feudal period. 'Classifications and definitions which were applicable then are still employed to a large extent. The obsolete doctrines of the English laws of real property have become the foundations of modern rules, except in so far as their technicalities have been disregarded, and except as they have been modified or superseded by statutory provisions. Property is defined as the right and interest which a man has in lands and chattels to the exclusion of others.
 

 Blackstone divided property into two classes: Personal, which consists in goods, money, and other movable chattels; and real, which consists of such things as are permanent, fixed, and immovable, as- lands, tenements, and hereditaments of all kinds which are not annexed to the person,- or
 
 *315
 
 cannot be moved from the place in which they subsist.
 

 A hereditament comprehends anything which may be inherited, whether corporeal or incorporeal, and includes both lands and tenements.
 

 These ancient classifications and definitions, which are yet applicable and potent when considered in conjunction with Section 8597, General Code, would, seem to leave no doubt that a permanent] leasehold is real property.
 

 Blaekstone has again divided estate into freehold and less than freehold. He has further described a freehold estate as one which requires actual possession of the land; again, it is such an estate in lands as is conveyed by livery of seizin. His description is summed up in the following conclusion :
 

 “As, therefore, estates of inheritance and estates for life could not by common law- be conveyed without livery of seizin, these are properly estates of freehold.” Bl. Comm., book 2, p. 104.
 

 Estates less than freehold include estates for years, at will, and by sufferance, and in 2 Blackstone, 143, the rule is declared that “every estate which must expire- at a period certain and prefixed, by whatever words created, is an estate for years.”
 

 All authorities agree that in the last analysis the true test of a freehold is indeterminate tenure.. Measured by this standard, how can it be said that a so-called permanent leasehold is really a lease at all, and what possible reason exists for classifying it as a chattel?
 

 Counsel, who are insisting that a permanent
 
 *316
 
 leasehold is not real property, do not reach that conclusion by logical deductions, but rather by reference to the common-law classification of leases as chattels real. Just why a chattel real should not be real property does not clearly appear. It is quite certain that no species' of property can be both real and personal at one and the same time. It must be conceded that, at common-law, term leases were classed as chattels, but we find no deeision of any court which applies this common-law rule to any demise to the grantee, his heirs and assigns, for successive terms of 99 years, renewable forever. While it is not definitely so stated, it is apparently the view of counsel for the creditors that a permanent leasehold is not a freehold and that therefore it is not real property. The answer to this is that an estate of inheritance is necessarily a freehold, and a freehold is necessarily real property. It is not urged that under the first provision of Section 8606 dower attaches only to a fee-simple title, and it is admitted that it is only necessary that it be an estate of inheritance. It follows that it may be any of the many hinds of conditional fees, and, unless and until the estate is terminated by the occurrence of any of the conditions, the dower attaches. Dower in a permanent leasehold cannot be denied solely upon the ground that it may be forfeited for nonpayment of rent or the violation of any of the other covenants contained in the instrument. The fallacy of such a claim is apparent when it is seen that even a fee-simple title may be lost in many ways, such as forfeiture to the state for nonpayment of taxes, sale on execution in satisfaction of debt, foreclos
 
 *317
 
 ure of the equity of redemption upon default of conditions in a mortgage, and in perhaps other ways. Under the feudal system the title to lands was in the sovereign, and allotments of lands were made in consideration of military service, and these allotments were called feuds, feoffs, or fees. At first these were not subject to alienation or inheritance. As civilization progressed and the feudal system began to wane, the conditions of military service were alleviated and in time lands began to be held in fee-simple title; that is to say, without any conditions whatever. Long before they became free from conditions of military service, and other kinds of service, they were permitted to descend to the heirs of the tenant. A permanent leasehold in Ohio subject to the laws of descent differs in no essential respect from the feuds of that period after they became, subject to the laws of inheritance and yet subject to certain kinds, of service. In the one case the condition is a payment of a fixed rental in money. In the other it Avas conditioned upon the rendition of a fixed service. They differ in kind, but not in degree. Feuds were clearly classed as corporeal hereditaments. Permanent leaseholds in Ohio are likewise corporeal hereditaments, and therefore real property.
 

 We shall not attempt to reconcile the reported cases, decided by Ohio courts of inferior jurisdiction, upon the subject of permanent leases, neither shall we attempt to explain or distinguish the expressions in the former adjudications of this court, upon this general subject. It is sufficient to say that it is not believed that the conclusions we-
 
 *318
 
 have reached in the instant case are violative of any expression of any former member of this court, where the expression was not clearly obiter.
 

 The estates and interests of both grantor and grantee are inheritable and descend to the heirs, and neither is subject to the laws of distribution. The grantee has a corporeal hereditament and the grantor has the right to receive the rents forever, which amounts to an incorporeal hereditament. This rule has been quite generally declared in the law of ground rents relating to conveyances in fee with perpetual rent reserved. This subject is discussed in 28 Corpus Juris, at page 842, where the rule is stated as follows:
 

 “In the absence of any statute affecting the common-law status of a conveyance in fee of land to one, with reservation of ground rent to the other, each party is the owner of a fee-simple estate; the grantee’s estate being a corporeal inheritance in fee in the land out of which the rent issues, and the grantor’s estate being an incorporeal inheritance in fee in the rent reserved.”
 

 At page 846 of volume 28, the same text-writer draws the distinction between a perpetual lease and a lease for a definite term:
 

 “A grant or lease in fee reserving rent operates as an assignment or sale and not as a lease, although, for some purposes, the relation of lord and tenant, or of landlord and tenant, may be assumed to exist between the parties. Properly speaking, a term of years or other certain period of time and a reversion seem to be indispensable to the idea of a lease.”
 

 
 *319
 
 In 3 Bouv. Law Diet., 2816, real property is defined:
 

 “Something which may be held by tenure or will pass to the heir of the possessor at his death instead of his executor, including lands, tenements, and hereditaments, whether the latter be corporeal incorporeal. ’ ’
 

 This controversy should not be decided upon the form of the instrument involved. It is of little'' importance whether the granting clause of the instrument is “demise, lease, and let,” or whether, on the other hand, it is “grant, bargain, and sell.”/ The vital question is one of tenure. It is impossible that any estate in lands can descend to the heir and still be less than freehold. Measured by all these tests, the conclusion is irresistible that, by the inherent quality of the instrument itself, as well as by the provisions of the Ohio statutes, a permanent leasehold is real property. It is there-/ fore subject to dower, under the first provision of Section 8606.
 

 Having found that the widow is entitled to dower .under the first piuvisibn' of Section 8606, it is unnecessary to determine the proper interpretation of the third provision of that section. Inasmuch as a great variety of contracts and instruments pertaining to real estate may hereafter come before this court for its determination as to whether or not dower shall attach, it does not seem advisable to lay down in this ease any principles relating to the third provision of that section, and we have therefore refrained from giving any consideration to the applicability of that provision to a “permanent lease.”
 

 
 *320
 
 Throughout this entire discussion we have used the expression “permanent leasehold,” because that is the term which has repeatedly been employed in the statutes, and it has therefore seemed convenient to use that expression as the basis of-the discussion. We agree with Judge Welch that such an instrument is not in any true sense a lease. We further agree with the probate court and the Court of Appeals that the proper method was employed in determining the present value of the widow’s dower interest.
 

 Judgment affirmed.
 

 Jones, Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.