GUSMAN ET AL. *v.* MATHEWS.

(Decided April 23, 1928.)

Mr. *Max Meisel* and Mr. *A. Kollin,* for plaintiffs in error.

Messrs. *Stanley & Horwitz* and Mr. *J. E. Mathews,* for defendant in error.

LEVINE, J. Error proceedings are prosecuted from the decision of the common pleas court by Maurice Gusman and others, who were defendants in the trial court.

The defendant in error, Fannie Mathews, who was plaintiff in the trial court, alleges in her petition that she is the owner in fee of two parcels of land, with buildings thereon, situated on Prospect avenue, Cleveland, Ohio; that on the 20th day of October, 1920, she executed a lease in writing to defendants Maurice Gusman and Adolph Weinberger for a term of 99 years, beginning November 1, 1920, in consideration of the covenants and agreements of the lessees to pay as rental for said premises the sum of $5,200 annually, in quarterly installments of $1,-300 each, from November 1, 1925, to October 31, 1930, in advance on the 1st day of November, February, May, and August of each year, at the main office of the Guardian Trust Company, Cleveland, Ohio; that about January 28, 1924, Maurice Gusman and Adolph Weinberger, defendants in the trial court, by an instrument in writing assigned said entire leasehold estate and interest to Louis A. Harris, also defendant in the trial court, who by the same writing covenanted and agreed with Maurice Gusman and Adolph Weinberger, and with plaintiff, Fannie Mathews, that he would keep, discharge and perform each and every obligation of said original lease; that the plaintiff consented to such assign-

ment upon the express condition in writing that the defendants, Maurice Gusman and Adolph Weinberger, or either of them, should not be released from their obligation under the lease of October 29, 1920, until a certain building required to be built upon said property had been built; that said building has not been built; that the defendants are in actual possession of said property and are collecting the rents and profits of the same; and that on August 1, 1927, the quarterly rental of $1,300, fixed by said lease, became due and payable, but has not been paid in whole or in part, although formal demand for said rent at the main office of the Guardian Trust Company had been made, and defendants have failed and refused to pay said quarterly rent. The petition concludes with a prayer asking judgment against defendants in the sum of $1,300, with interest from August 1, 1927.

To this petition the defendant Louis A. Harris filed an amended answer in which he admitted that plaintiff is the owner in fee of the two parcels of land, with buildings, as set forth in her petition, and gives a true description thereof; admits the execution in writing of the lease to defendants Maurice Gusman and Adolph Weinberger for a term of 99 years, renewable forever; admits that on or about January 28, 1924, defendants Maurice Gusman and Adolph Weinberger, by an instrument in writing, assigned to defendant Louis A. Harris said lease; admits that he (Harris) agreed to assume all obligations of the original lessees; admits that plaintiff consented to the assignment upon the express conition in writing that the defendants Maurice Gusan and Adolph Weinberger should not be released

from their obligation under the lease of October 29, 1920, until a certain building required to be built upon said premises should be built, but that said building has not been built; admits that he is in possession of the property and collects the rents from the same; and admits that said plaintiff has not received payment of said quarterly rental of $1,300, beginning August 1, 1927, although plaintiff has demanded said rent. By way of defense, defendant Harris avers that the lease contains the provision giving the lessees the option to purchase said premises at any time during the first 25 years of said lease for the sum of $100,000; that the lease provides that the lessee shall at the time of the execution of the lease furnish the lessor a surety bond in the sum of $6,500, which bond should be conditioned in substance to secure the construction and completion of said building referred to in the petition, and said bond being further conditioned to secure the punctual payment of all amounts payable under the terms of said lease until the new building referred to has been completed.

It is further averred by way of defense that, in addition to the rental to be paid by the lessees aforesaid, the lessees convenanted and agreed to pay to the public officers charged with the collection thereof all taxes and assessments levied and assessed against said premises during the term of the lease, including taxes for the last half of 1920, and all special taxes and assessments payable therewith, as well as the taxes, assessments, and public charges of every kind and description which shall be levied, assessed, or imposed upon said premises during the full term of said 99-year lease, upon the rental re-

served thereon, as well as upon the buildings and improvements erected on said premises.

The answer further averred that the lease contained the usual and customary forfeiture clause giving the lessor the right to forfeit the lease if at any time the rent, taxes, and assessments and other charges and payments as aforesaid shall become in arrears and unpaid; that by reason of said provision relating to forfeiture the plaintiff has the right to forfeit said lease.

The answer further averred that when the lease was assigned to him by Maurice Gusman and Adolph Weinberger he executed and delivered to plaintiff, the lessor, a surety bond in the penal sum of $6,500, furnished by the Maryland Casualty Company, and approved by plaintiff, in lieu of the $6,500 bond which had at the execution of the lease been furnished to lessor in accordance with the terms of the lease.

The answer further averred that by virtue of the provisions of said lease, Maurice Gusman and Adolph Weinberger, lessees, assumed and agreed to pay, in regard to the two parcels of land described in said lease, all liabilities which usually attached to the owner of real estate; and the answer further averred that said lease is made to the lessees, their heirs and assigns, renewable forever, and that under the Ohio laws the estate created by such lease becomes a freehold estate in real property.

By way of further defense Harris averred that the plaintiff prior to the filing of her action in common pleas court, known as No. 283208, filed an action in said court known as No. 280325 against the same defendants, making the same allegations in said

prior action against these defendants as she made in the action known as No. 283208, excepting that in the prior action plaintiff sued the same defendants for the quarterly rental for said premises, beginning May 1, 1927; that he did not file any defense to said prior action, and, upon hearing of said action, judgment for the amount prayed for was recovered against all of the defendants.

The answer further avers that prior to the filing of the action known as No. 283208 in common pleas court, Cuyahoga county, Ohio, by plaintiff, he offered to plaintiff to surrender possession of the premises described in the lease, but plaintiff refused the same, and that prior to August 1, 1927, he informed her that he would refuse to pay any further rent provided for in said lease, and that he is now ready and willing to surrender possession of said premises to the plaintiff, but that plaintiff has at all times refused to accept same.

The answer further averred that plaintiff, by reason of her recovering judgment against all the defendants in her action known as case No. 280325, and by reason of his averments as aforesaid, is precluded and barred from asserting her claim in the instant case against defendant Louis A. Harris, and by reason thereof said Louis A. Harris is not indebted in any sum whatsoever to plaintiff on said lease; that the judgment which plaintiff recovered against the defendants in case No. 280325 has been fully paid and satisfied.

The plaintiff, Fannie Mathews, filed a reply to the answer of Louis A. Harris, which is brief and reads as follows:

"For reply to the amended answer of Louis A.

Harris the plaintiff admits the allegations of such amended answer, excepting the inferences and conclusions of law which said answering defendant asks to draw from the averments of fact in said amended answer, which inferences and conclusions this plaintiff denies.''

From the foregoing it is clear that the facts involved in this action are undisputed and that the question resolves itself into one of law. Section 5 of Article 3 of said lease gives lessor the right, in the event she forfeits the lease, to hold the $6,500 bond as stipulated damages.

The other defendants, who are plaintiffs in error in this court, in substance set forth the same statement of facts herein given.

The contention of plaintiffs in error is in substance that after plaintiff had recovered a judgment against defendants for the quarter beginning May 1, 1927, in common pleas court, and after such judgment was paid and satisfied, defendant in error, who was plaintiff in the trial court, cannot maintain her instant action, in view of the undisputed fact that prior to the filing of the first action for quarterly rent she was notified by plaintiff in error Louis A. Harris that he would refuse to pay any further rent provided for in the 99-year lease, renewable forever, and who also offered to surrender possession of the premises to plaintiff, which plaintiff refused, and that defendant Louis A. Harris is now ready, willing, and able to surrender said possession to plaintiff, which the plaintiff refuses.

It is argued that a 99-year lease, renewable forever, is an indivisible contract, and that only one action can be maintained by reason of its breach.

In the case of *Strangward* v. *American Brass Bedstead Co.*, 82 Ohio St., 121, 91 N. E., 988, the Supreme Court held:

"A recovery for a monthly installment of rent, that being all that was due at the time action was commenced, is not a bar to recovery for installments subsequently coming due upon the lease."

Counsel for plaintiffs in error, while aware of this holding, seek to point out that a 99-year lease, renewable forever, has different elements than an ordinary short-term lease, such as was the basis of the suit in *Strangward* v. *American Brass Bedstead Co., supra,* and that therefore said holding is not applicable.

We are referred to the case of *Ralston Steel Car Co.* v. *Ralston*, 112 Ohio St., 306, 147 N. E., 513, 39 A. L. R., 334, in which the court laid down the rule that a permanent leasehold estate is to all intents and purposes a freehold estate in real property, and that the same is subject to the laws of descent as an estate in fee.

We are also referred to the following pertinent language of Welch, J., in the case of *Worthington* v. *Howes & McCann,* 19 Ohio St., 66, at page 75:

"For all substantial purposes, it is a leasehold estate in name and in form only. The lessor, in effect, parts at once with his entire estate, for a stipulated consideration in money, payable in specified installments, and secured by a *lien* upon the land; and the lessee takes the entire estate, an estate of inheritance, subject only to the payment of the money. In form merely is it a chattel; it is in fact an estate in fee. Is it not a mistake, then, to hold, that such an estate is subject to all the incidents of an

actual estate for a limited term of years? One by one it has been found necessary, at least in Ohio, to deny these incidents in their application to permanent leasehold titles.''

We are also referred to the case of *James* v. *Allen County*, 44 Ohio. St., 226, 6 N. E., 246, the syllabus of which reads:

''Where an employee, engaged under a contract for a specified time, the wages being payable in installments, is wrongfully discharged before the expiration of the period of hire, and all wages actually earned at the time of the discharge have been paid, an action will not lie to recover the future installments, as though actually earned, but the remedy is by action for damages arising from the breach of the contract, and one recovery upon such. claim is a bar to a future action.''

It is argued that there can be no valid distinction between a contract for services and a permanent leasehold estate where the lessor in effect parts at once with his entire estate for a stipulated consideration in money, payable in specified installments, and secured by a lien upon the land.

It is urged that public policy dictates a similar rule in the case of a 99-year lease, renewable forever.

Our attention is called to what is termed to be common knowledge that within the last ten years many 99-year leases have been executed in this community; that recently there have been a great number of foreclosures in connection with 99-year leases; that this 99-year lease, which is the basis of this lawsuit, is probably one of the few exceptions where the lessor is attempting to sue for each quarter, when the rent becomes due, without exercising

her right to forfeit the lease and retain the security as stipulated or liquidated damages.

It is urged that if this court were to render a decision, upon grounds of public policy, to the effect that the lessor can maintain only one action on a breach of a 99-year lease, renewable forever, considerable good would result therefrom; that if the contentions of the defendant were to be sustained it would give rise to a multiplicity of actions, which the law does not favor.

Counsel for defendant in error summarize the questions presented upon the record as being two in number:

(1) In view of the modern characteristics of 99-year leaseholds, renewable forever, do the original lessees remain liable upon their covenants to pay rent under such leases, where the assignee has put up with the lessor the bond referred to in the above statement?

(2) Is there anything in the nature of a 99-year leasehold estate which operates to deprive the lessor of his right to sue for the stipulated rent as it falls due, and does the bringing of one action for an installment of rent, when due, oblige the lessor to embrace therein all damages claimed, as for an entire breach—for all future rent under such lease?

The answer to question 1 is hardly in dispute, for upon a perusal of the answers and amended answer filed in the case at bar it is practically conceded that the original lessees were never released from their obligation to pay rent, and that the lessor only consented to an assignment upon condition that the original lessees are to remain liable upon their covenant to pay rent, except in the event that a cer-

tain building to cost not less than $50,000, required to be built upon the property, had been built—a condition which never took place. Since the assignee, Harris, defaulted in the payment of the quarterly rent, the lessees would have been liable even if there had been no express agreement to that effect.

In *Sutliff* v. *Atwood,* 15 Ohio St., 186, the court held:

"An express contract of the lessee fixes his liability for the whole term; but that of the assignee is limited to the rent accruing during the continuance of his interest. The lessor may, at his election, pursue either or both for payment." *Nora Cesarea Harmony Lodge* v. *White,* 30 Ohio St., 569, 27 Am. Rep., 492.

Thompson on Real Property, Volume 2, 499, Section 1380, states the doctrine as follows:

"After an assignment of the lease, the lessor has a double and several security for the payment of his rent, either or both of which he may pursue till satisfaction is obtained. Therefore, the receipt of rent from the assignee of the lessee does not amount to a novation or release of the lessee, but is the assertion of a right which accrued to the lessor as an incident to the assignment."

In addition to the general law on the subject there is added in the case at bar the express agreement had between the parties relating to the liability of the original lessees, said agreement having been entered into at the time of the assignment.

The answer to question 2 does not seem to us fraught with difficulty, conceding that a 99-year lease, renewable forever, partakes of a freehold es-

tate, and giving it all the attributes which counsel for plaintiffs in error seek to give it, we fail to see by what process of reasoning the original lessees are to be exempted from the express covenant found in the lease, whereby they obligated themselves to pay quarterly installments of rent as the same fall due. A study of the case of *Strangward* v. *American Brass Bedstead Co., supra,* fails to disclose any real distinction between that case and the case at bar. Quoting from the opinion, pages 126, 127, of 82 Ohio St., (91 N. E., 989), we find the following pertinent language:

"As to this averment of the vacation of the premises by the defendant it is enough to say that, as appears by the pleadings, they were abandoned by the defendant without fault of the plaintiff, and it cannot be the law that a lessee, obligated by a written lease to pay rent for two years, can escape liability by simply abandoning the premises rented."

In 24 A. L. R., at page 891, the rule is thus stated:

"It is too well settled to admit of controversy that rent is not due until it is earned, and that an action cannot be maintained to recover rent before it is due by the terms of the lease. Hence the rule is universal that where the rent for a subsequent period was not a demand existing at the time of the commencement of a suit for accrued rent, and could not, under the conditions of the lease, have been recovered at that time, the subsequent action is not barred by the former judgment."

We know of no sound consideration of public policy which would destroy the express obligation found in a 99-year lease, renewable forever, or even in a deed of conveyance. There was no release of

that obligation by the act of the lessor; nor can we see any release by operation of law. The law cannot effect a release of an obligation, when such release would operate contrary to the manifest intention of the parties.

If the former suit were instituted, not for rent, but, instead, for breach of contract, the adjudication of that case would end the controversy between the parties, but the former suit, having been limited to the quarterly rent which fell due and remained unpaid, we cannot conceive of any reasonable rule which would hold that the same is a bar to any further action for rent. Such a holding would be manifestly in sharp contrast with what the party intended when she brought her first suit for the quarterly installment of rent; for, had she intended the first suit to be the means of settling the entire controversy between them, she would not have formulated her action for the quarterly rent, but for breach of contract.

It may be said in passing that if considerations of public policy were to enter into our decisions a holding such as plaintiffs in error contend for would operate injuriously and unjustly upon an unsuspecting public. We are all familiar with the floating of bond issues upon leasehold estates. The chief inducement of the purchase of a bond upon such leasehold estate is the knowledge or belief that lessees financially responsible have obligated themselves to pay a rental sufficient to take care of the obligations of the bond. All the parties must be held to their express obligations, and the investing public has the right to rely upon the fundamental principle that they will be so held to their express

obligations. It makes no difference what inducement these obligations are contained in. Once the obligation arises it continues on until the same has been fully performed, or has been discharged by the act of the parties.

We can see no reason why the assignee, Harris, should be viewed in a light different from the original lessees. It is admitted in the pleadings of the assignee, Harris, that he agreed to assume all the obligations of Maurice Gusman and Adolph Weinberger, lessees under the lease. This assumption on his part fixed his status, as it formed one of the considerations which induced the lessor to give consent to such an assignment. The original lessees conceded in their pleadings that the consent of the lessor to such assignment was upon the express provision in writing that the original lessees, or either of them, should not be released from their obligation under the lease of October 29, 1920, until a certain building to cost not less than $50,000, required to be built upon said property, had been built, and that such building has not been built. In view of these considerations, we hold that the judgment of the common pleas court is correct, and the same will be affirmed.

*Judgment of the Court of Common Pleas affirmed.*

SULLIVAN, P. J., and VICKERY, J., concur.