In re HOTEL GIBSON CO (RUTHERFORD et al., Interveners).

No. 11650.

District Court, S. D. Ohio, W. D.

April 30, 1935.

Dolle, O'Donnell & Cash, of Cincinnati, Ohio, for Gibson Hotel Co.

Haveth E. Mau, of Cincinnati, Ohio, for intervener Albert G. Rutherford.

C. W. Broeman and Taft, Stettinius & Hollister, all of Cincinnati, Ohio, for interveners Amelia M. Adams et al.

H. C. Busch and John McCarthy, both of Cincinnati, Ohio, for intervener William A. Wanstrath.

Frank W. Cottle and Hubert T. Campbell, both of Cincinnati, Ohio, for First Nat. Bank.

NEVIN, District Judge.

On February 9, 1935, the Hotel Gibson Company, a corporation organized and doing business under the laws of the state of Ohio, as a debtor, filed a petition in this court under section 77B, chapter 8, title 11, § 207, of the United States Code (11 US CA § 207).

In its petition the debtor alleges inter alia that "the assets of the debtor consist of a perpetual leasehold estate with privilege of purchase in two tracts of land located at Fifth and Walnut Streets in the City of Cincinnati, and on which the Hotel Gibson stands." The petition contains allegations with respect to the boundaries of the property, the value thereof, and to the furniture and equipment and supplies in the hotel, together with a statement regarding the cash, accounts receivable, and miscellaneous current assets. The liabilities of the debtor, as shown by its books, also are set forth. Debtor alleges that on February

4, 1934, there was filed in this court a petition entitled "Albert G. Rutherford against The Hotel Gibson Company," in which, among other things, the court was asked to appoint a receiver for the Hotel Gibson Company, but that no receiver has ever been appointed. It alleges that Albert G. Rutherford is a holder of land trust certificates evidencing a beneficial interest in the northerly tract of real estate described in the petition. Debtor alleges that it is not insolvent, but that for certain reasons it is unable to meet its debts as they mature, and alleges that, in order to work out a readjustment of the payments to be made by it to the First National Bank of Cincinnati, as trustee, and for other reasons, "there is need for a prompt reorganization under favor of the provisions of Section 77B." Debtor prays the court to take jurisdiction of the cause, to approve the petition, and for other relief as set forth in the prayer.

On February 25, 1935, Albert G. Rutherford, by leave of court, filed his bill of intervention herein, alleging he is a citizen of the state of West Virginia; that on or about April 1, 1930, a written agreement and declaration of trust was executed by and between the First National Bank of Cincinnati, and such persons, corporations, etc., as became parties to said declaration by acceptance of certificates of equitable ownership issued under said declaration. He alleges that the equitable ownership and beneficial interest in the trust estate was divided into 30,000 indivisible equal interests, represented by "Land Trust Certificates," and that he is the owner of "50/30,-000th equitable ownership" in the premises. He alleges that all 30,000 indivisible equal interests have been issued and are outstanding. This intervener further alleges that on or about April 1, 1930, the First National Bank of Cincinnati, as trustee, entered into a certain indenture of lease with the debtor, the Hotel Gibson Company, by the terms and provisions of which the First National Bank of Cincinnati, as trustee, leased the premises involved to the Hotel Gibson Company for a term of 99 years, renewable, at the option of the lessee, forever, with certain options of purchase, and that the debtor company agreed to pay to the lessor, as trustee, certain rentals; that the debtor company is now in default under the provisions of the lease on account of the rentals. Intervener Rutherford asks the court to protect his interests, administer all of the property, appoint a receiver, or a temporary trustee, and in due course a permanent trustee, and for such other orders as may be necessary and proper to protect his rights.

On March 14, 1935, an intervening petition was filed on behalf of Amelia M. Adams and others, who represent "that they are owners and holders of Gibson Land Trust Certificates, issued by First National Bank of Cincinnati, as Trustee, under an agreement and declaration of trust between said First National Bank of Cincinnati, as Trustee, and the holders of Gibson Land Trust Certificates." To this petition is attached, as Exhibit A, a printed copy of the agreement and declaration of trust just referred to, and as Exhibit B a printed copy of the indenture of lease between First National Bank of Cincinnati, trustee, and the Hotel Gibson Company, both of which are dated April 1, 1930. There is also submitted a plan of reorganization of the Hotel Gibson Company, marked Exhibit C, and other data also marked as exhibits. These intervening petitioners pray that the court "may find that the holders of all Gibson Land Trust Certificates, as a class, are secured creditors of the debtor, The Hotel Gibson Company, in the amount of $3,000,000.00, and unsecured creditors with claims in the amount of $262,500.00, as of January 1, 1935, together with interest," etc., that the claims of all other creditors are not affected by the plan of reorganization, and that a date for a "hearing upon the fairness of the plan of reorganization" be set, and for other incidental relief.

On March 15, 1935, an intervening petition and objections to the plan of reorganization were filed on behalf of William H. Wanstrath, administrator, in which he prays for "a full consideration of the objections" set forth in his petition.

On March 15, 1935, an intervening petition was filed on behalf of the First National Bank of Cincinnati, trustee, wherein, after referring to the lease of April 1, 1930, between the trustee and the debtor, it is recited that the debtor company has failed to keep and perform its covenants and agreements as in the lease set forth. Intervener prays the court to determine the amount of its claim and to protect its lien upon the leasehold estate of the debtor.

On April 1, 1935, the Hotel Gibson Company, debtor, filed a proposal of a plan

for the reorganization of the debtor company, adopting the plan "heretofore submitted by Amelia M. Adams, et al."

On April 11, 1935, Dan W. Dettelbach, who alleges that he is a creditor of the debtor company in the sum of $32,394.42, filed objections to the plan of reorganization as submitted.

It is agreed that the last payment of rent made by the debtor was on April 1, 1933, and that on April 1, 1935, the debtor was in default for rent in the sum of $300,000 and for amortization in the sum of $30,000.

A hearing on the fairness of the plan of reorganization has been set for May 2, 1935. A question involving the jurisdiction of the court has been raised by counsel representing some of the interested parties. This preliminary jurisdictional question is, Are holders of Gibson land trust certificates creditors of the debtor for the purposes of this proceeding?

So far as the court or diligent and able counsel have been able to ascertain, the question involved herein has not heretofore been answered by the decision of any court. A proper answer to the question is one of very great and grave importance. It is important, not only in the instant proceedings, but also because the method of financing by land trust certificates has not been an uncommon one in this State. It is a matter of common knowledge that land trust certificates to the extent of many millions of dollars have been sold to the public in the state of Ohio, and that many companies were financed by such issues. Millions of dollars of such securities are outstanding. In the instant proceedings alone such securities to the extent of $3,000,000 are involved.

The intervener First National Bank of Cincinnati, trustee, asserts that it is the sole legal owner of the real estate described in the lease (commonly called the underlying fee), "which the Trustee is entitled—and obligated—to defend against all claims, including the claim implied in the Plan that some of the certificate holders have the power to deal with said underlying fee by consent or agreement of less than all of the certificate holders; that since this underlying fee is not 'property of the bankrupt,' this Court is without jurisdiction in this proceeding to order its sale, transfer or conveyance under any provision of the Bankruptcy Law or any amendment thereof; that the Trustee is the sole owner of the debt of the bankrupt for money payments in default, which the Trustee is entitled—and obligated—to prove and assert throughout these proceedings, to the exclusion of any number less than all of the certificate holders." In support of its claim, the trustee urges that the bankruptcy court will follow the law of the state where real property is located, in determining questions of title to that property. Counsel assert that, even if the certificate holders are equitable owners of the underlying fee, nevertheless the trustee is the legal owner thereof. Counsel submit that there are two separate and distinct estates in the premises, to wit:

(a) The trustee is the owner of a fee-simple estate in the premises, commonly called the underlying fee.

(b) The debtor is the owner of a freehold estate in the premises, commonly called the leasehold estate, and that no provision of the Bankruptcy Law or any amendment thereto authorizes the court to take, sell, or transfer the underlying fee-simple title of the trustee, with the consent of any number less than all of the holders of the equitable ownership and beneficial interests therein.

Counsel for intervener Wanstrath submits that the land trust certificate holders are the real owners of the fee and stand before the court in that position, and that they are also creditors of the Hotel Gibson, each one to the amount of his pro rata share of the past-due rent; that, so far as this case is concerned, the trustee, cestui que trust, and the hotel each must refer to its own instrument for its legal rights; that this court is confined to the specific power of cancellation of unexpired leases, but "cannot proceed further to dispossess the holders of their fee in favor of a defaulting lessee and force such owners of the fee to take a mortgage security which may or may not be as good as the fee they now hold."

Counsel for intervener Rutherford state that the controversy now for decision, "as we see it, is: Can Congress, under guise of its powers over the 'subject of bankruptcies' take property belonging to one person —Mr. Rutherford—and give that same property to another private individual—The Hotel Gibson?" They claim that the plan of reorganization proposed not only releases the Hotel Gibson from certain obli-

gations, but in addition takes real estate and property belonging, not to the Hotel Gibson, the debtor, but to Mr. Rutherford and others and delivers it to the debtor. They assert that Congress has no such power; that it was never the intention of Congress in enacting section 77B to include one situated as is intervener Rutherford, when all of the facts in the instant proceedings are kept in mind; that, "if Section 77B is to be construed as claimed by the proponents of the plan of reorganization, it is unconstitutional and void," but that, rather than to so hold, this court should interpret the act to mean "that certificates of equitable interest held by Mr. Rutherford were not within the contemplation of Congress in enacting Section 77B."

Counsel representing interveners Adams and others make the following claims:

"1. That Gibson Land Trust Certificate holders fall within the express definition of 'creditors' contained in section 77B, and that Land Trust Certificates fall within the express definition of 'securities' contained in section 77B. 2. That the spirit of the entire Corporate Reorganization Act, of which section 77B is a part, requires that the Court have power to deal with holders of Land Trust Certificates as it deals with other creditors. 3. That even if Land Trust Certificates were not expressly included, the Court would have power to look through the fiction of a Land Trust Certificate, and treat holders of such certificates as ordinary creditors. 4. That the rights of minority holders of Land Trust Certificates are not infringed by subjecting them to the provisions of section 77B."

Upon a full consideration of all of the facts as disclosed by the record and the arguments of counsel, as presented both orally and on brief, together with the authorities cited, the court is of the opinion that the claims of the interveners Amelia M. Adams et al., as asserted by their counsel in their brief, as above set forth in paragraphs 1, 2, and 4, are correct. Entertaining this view, it is not necessary for the court to examine into or discuss the claim asserted in paragraph 3. The reasons which have led the court to this conclusion follow:

It is provided in subsection 10 of section 77B (b) of the act, 11 USCA § 207 (b) (10), as follows: "The term 'securities' shall include evidences of indebtedness, either secured or unsecured, stock, certificates of beneficial interest therein, and certificates of beneficial interest in property. * * * The term 'creditors' shall include for all purposes of this section and of the reorganization plan, its acceptance and confirmation, all holders of claims of whatever character against the debtor or its property, including claims under executory contracts, whether or not such claims would otherwise constitute provable claims under this Act [title]. The term 'claims' include debts, securities, other than stock, liens, or other interests of whatever character."

Land trust certificates are "certificates of beneficial interest in property" as the term is used in this act. Land trust certificates are referred to in the agreement and declaration of trust as "Certificates of Equitable Ownership." "Creditors" are defined by the act as "all holders of claims of whatever character against the debtor or its property." The act provides that: "The term 'claims' includes * * * securities * * * or other interests of whatever character."

The definitions of the words "securities" and "creditors" are much broader under section 77B than they are under the ordinary Bankruptcy Act. The term "creditors" is no longer confined to persons having a claim against the debtor. It includes also the holders of claims against the debtor's property. But it is contended that the property on which the northern part of the Hotel Gibson is built is not the property of the debtor within the meaning of the act. It appears to be conceded (as claimed by the trustee) that a court of bankruptcy will follow the law of the state where real property is located in determining questions of title to that property. In re Barnett (C. C. A.) 12 F.(2d) 73, 76.

Having this principle of law in mind, counsel for the respective parties, both orally and on brief, presented to the court, and have discussed at length, their views with respect to the law of Ohio bearing upon the question as to who is the owner of the land upon which the northern part of the Hotel Gibson is built. It is argued upon the one hand that the owners of the underlying fee are the owners of the land; that the Gibson Hotel Company does not own the property, but merely has a lessee's interest therein under an ordinary lease, that a lessor under an ordinary lease is not

a creditor, and that therefore this court has no jurisdiction over the land trust certificate holders or their trustee, except as to the claim for past-due rent. Counsel making this claim support it by the authority of McCammon et al. v. Cooper, Trustee, 69 Ohio St. 366, 69 N. E. 658, and Rawson v. Brown, 104 Ohio St. 537, 136 N. E. 209 wherein the first syllabus reads as follows: "A permanent leasehold estate renewable forever is not a fee simple, although under the Ohio statutes it has many of the incidents thereof. The fee simple remains in the lessor, his heirs, devisees, or assigns."

On the other hand, it is claimed that the Hotel Gibson Company is the owner of a permanent leasehold estate, and as such is the owner of the land itself; that it has a corporeal hereditament; that the owner of the underlying fee has only an incorporeal hereditament, an intangible property right, that is, the right to receive rents out of the land, but that, even if the owners of the underlying fee are the owners of the land, the Hotel Gibson Company owns the permanent leasehold estate; that that estate is "property," and is subject to the jurisdiction of this court, and that the land trust certificate holders have a claim against that property within the meaning of section 77B.

Counsel advancing this contention cite, among others, the following cases: Loring v. Melendy, 11 Ohio, 355. In that case the court say (second syllabus): "A permanent leasehold estate is not a chattel, but is realty, subject to all the laws and rules which attach to land." In the opinion, 11 Ohio, 355, page 358, the court say: "A permanent leasehold estate is not a chattel, but is, in truth, land, carrying the fee. * * * We therefore declare that permanent leasehold estates are lands subject to all the rules and laws which attach to land for all purposes. * * *" Stephenson v. Haines, 16 Ohio St. 478. Worthington v. Hewes, 19 Ohio St. 66. In the Worthington Case, the court in its opinion, Welch, J., 19 Ohio St. 66, page 75, say: "For all substantial purposes, it is a leasehold estate in name and in form only. The lessor, in effect, parts at once with his entire estate, for a stipulated consideration in money, payable in specified instalments, and secured by a lien upon the land; and the lessee takes the entire estate, an estate of inheritance, subject only to the payment of the money. In form merely is it a chattel;

it is in fact an estate in fee. Is it not a mistake, then, to hold, that such an estate is subject to all the incidents of an actual estate for a limited term of years? One by one it has been found necessary, at least in Ohio, to deny these incidents in their application to permanent leasehold titles."

Finally, counsel rely on Ralston Steel Car Co. v. Ralston, 112 Ohio St. 306, 147 N. E. 513, 39 A. L. R. 334, the first syllabus of which reads as follows: "1. Where the owner of real estate leases the same to another and to his heirs and assigns for a term of 99 years, renewable forever, the estate created by such instrument becomes a freehold estate in real property and becomes subject to the laws of descent as an estate in fee." In the opinion, 112 Ohio St. 306, page 320, 147 N. E. 513, 517, 39 A. L. R. 334, the court say: "We agree with Judge Welch [in the Worthington Case] that such an instrument [permanent leasehold] is not in any true sense a lease."

In order to decide the question presented in the instant proceeding (to wit, Are these certificate holders creditors for the purposes of section 77B?), the court does not deem it necessary for it to reconcile the decisions of the Supreme Court of Ohio, if indeed there is any conflict between them (as to which the Court expresses no opinion)—other than such as appears from the divergent views of counsel. At any event, the Hotel Gibson Company is the owner of a permanent leasehold estate, and that estate is "property" subject to the jurisdiction of this court.

In their brief counsel for the intervener First National Bank, trustee, say: "Certainly the debtor herein has a leasehold estate which can be sold, if it has any value, and therefore can be dealt with by this Court, but no counsel has cited any case holding that the lessor's estate is or can be in any wise involved in the proceedings. We submit that the interest of the lessor is 'property,' 'an estate of inheritance,' 'a freehold estate,' which is not reached or sought to be reached by any provision or amendment of the bankruptcy law and that therefore there is no statute which gives or attempts to give this Court jurisdiction over it."

The court is of the opinion, however, that holders of land trust certificates are holders of claims against that property. As such certificate holders, they have not only a claim against the debtor's property, but

it is a claim to take away from the debtor all of that property and extinguish all of its permanent leasehold estate. What the court finds, and all that the court finds in the instant proceeding, is that the permanent leasehold of the debtor is "property" and is "its property" "for all purposes of this section (77B) and of the Reorganization Plan," and that the land trust certificate holders are "creditors" "for all purposes of this section (77B), and of the Reorganization Plan."

It is contended that the trustee, and not the land trust certificate holders, is the creditor of the debtor. It is conceded, however, that, as this is a court of equity, it has power to look through the shadow to the substance. The real·parties in interest are those whose funds are invested—they are the real creditors.

■ Entertaining the opinion that land trust certificates are "securities" and land trust certificate holders are "creditors" for the purpose and within the meaning, spirit, and intent of section 77B, the court finds that in the instant proceeding the holders of all Gibson land trust certificates, as a class, are secured creditors of the debtor, the Hotel Gibson Company, in the amount of $3,000,000, and unsecured creditors with claims to the extent, pro rata, debtor is in default of payments due under its lease.

■ The court is further of the opinion that this finding and ruling does not render section 77B unconstitutional and void, as claimed particularly by intervener Rutherford. In Campbell v. Alleghany Corporation (C. C. A. 4) 75 F.(2d) 947, 950, March 2, 1935, C. C. H. Bankruptcy Law Service, § 3315, the Circuit Court of Appeals held valid and constitutional the applicability of section 77B to secured claims, and in the same opinion sets forth the purposes of the act. The court say: "The statute is of a remedial character, designed to facilitate the reorganization of corporate business made necessary by the economic depression through which the country has been passing. Its purpose should be forwarded by a fair and liberal construction of its provisions, not thwarted by any narrow or technical interpretation, and certainly not by reading into its language conditions and limitations which the lawmakers themselves did not see fit to express. And we entertain no doubt as to the constitutionality of the statute. * * * As a matter of fact, no property in any real sense is taken from the dissenting creditor when he is compelled under 77B to scale his claim and accept securities in lieu thereof. The securities held by him have already shrunk in value before the proceeding under the act is instituted; and all that is required of him is that he face reality and accept his pro rata interest in the debtor's property in a form which will not jeopardize the rights of other creditors similarly situated. If he were allowed to insist on the foreclosure of the lien in which he is interested in common with others, he would bring serious injury to them without benefit to himself. Under the act, he is merely required to accept what two-thirds of those similarly situated are willing to accept, and what the court has found to be fair and reasonable under the circumstances; and, when the situation is viewed realistically, it is readily seen that he is not required to surrender any part of the value either of his securities or of the property available for the payment of his claim. What he in fact gives up is merely the arbitrary power to frustrate the wishes of the great majority of those who have a common interest in the property of the debtor, or, in other words, the power to demand from other creditors an unconscionable settlement of his claim as the price of withdrawing objection to a plan of reorganization which is fair to all parties concerned. The act is based upon an equitable recognition of the rights of all who have an interest in a common property, and is in accord with the principle under which courts of equity have denied to dissenting creditors the right to prevent the consummation of a plan of reorganization which has been found to be fair and open to all creditors on the same terms."

In the case of Continental Illinois National Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co. et al., 55 S. Ct. 595, 603, 79 L. Ed. 1110 decided April 1, 1935, the Supreme Court of the United States upheld the constitutionality of section 77 of the Bankruptcy Act (11 USCA § 205), applying the same principles to railroad corporations as applied under section 77B in general. In the opinion the court say: "The English law of bankruptcy, as it existed at the time of the adoption of the Constitution, was conceived wholly in the interest of the creditor and proceeded upon the assumption that the debtor was necessarily to be dealt with as an offender. * * * But the notion that the framers

of the Constitution, by the bankruptcy clause, intended to limit the power of Congress to the then existing English law and practice upon the subject long since has been dispelled. * * * It follows, from what has now been said, that section 77 in its general scope and aim, is within the power conferred by the bankruptcy clause of the Constitution; and we so hold."

Due process is not denied—the security holders of the Gibson Hotel all have the opportunity to appear before the court on May 2, 1935, to contest the fairness of the plan of reorganization.

Neither intervener Rutherford nor any of the other nonaccepting interveners, as creditors, are in any different position than those creditors who do not accept a plan of reorganization as provided in paragraph 1 of subsection (e) of section 77B of the act, (11 USCA § 207 (e) (1).

As stated by the court in Campbell v. Alleghany Corporation, supra: "As a matter of fact, no property in any real sense is taken from the dissenting creditor when he is compelled under section 77B to scale his claim and accept securities in lieu thereof. * * * Under the act, he is merely required to accept what two-thirds of those similarly situated are willing to accept, and what the court has found to be fair and reasonable under the circumstances; and, when the situation is viewed realistically, it is readily seen that he is not required to surrender any part of the value either of his securities or of the property available for the payment of his claim."

█ It is evident that it was the intent of Congress, by enacting section 77B, to get away from the technicalities of the ordinary bankruptcy procedure and to include within its scope every person who has an interest in the debtor's property. As stated in an article recently published on Jurisdiction of the Court in Proceedings under Section 77B (Brooklyn Law Review, vol. 4, No. 3, March, 1935): "The purpose of section 77B of the Bankruptcy Act is to supply a vehicle for the rehabilitation of corporate debtors. When the adoption of the statute was contemplated, it was realized that expeditious reorganization requires the court to have greater powers and wider jurisdiction than courts in bankruptcy or in equity receivership proceedings possess."

In the instant proceeding, more than 92 per cent. of all of the land trust certificate holders have approved the plan. The inclusion of land trust certificate holders as "creditors" under and for the purposes of section 77B accomplishes the desired result, which Congress no doubt intended, of facilitating reorganizations sought by two-thirds in amount of holders of certificates and the jurisdictional percentages of other creditors and stockholders, while providing safeguards for nonassenting holders. Certainly it was not the intention of Congress that a small minority should prevent the great majority—in this instance over nine-tenths—from carrying forward what appears (in the event the plan is found to be "fair and equitable") to be for the best interests of all concerned.

Answering the question propounded, the court is of the opinion that the holders of Gibson land trust certificates are creditors of the debtor for the purposes of this proceeding, and that the court has jurisdiction to proceed with the hearing on the proposed plan, in accordance with the provisions of section 77B.