## YOUNG v. COMMISSIONERS OF MAHONING COUNTY et al.

### (Circuit Court, N. D. Ohio, E. D. December 5, 1892.)

#### No. 4,699.

1. EJECTMENT—OCCUPYING CLAIMANT'S LAW—WHO MAY CLAIM BENEFITS.

Rev. St. Ohio, § 5786. subd. 2, enumerates, among the persons entitled to the benefit of the occupying claimant's law, any person who holds "by deed * * * from and under a person claiming title as aforesaid, * * * by deed duly authenticated and recorded." *Held,* that one claiming title by a deed from a grantor who held under a deed must, to secure the benefits of the law, show that both deeds were conveyances in fee; but he is not presumed to know of defects in the title of the more remote grantor, and it is immaterial that such grantor, being a municipal corporation, held only a base fee, which had in fact been theretofore determined by an abandonment of the use to which the lands were dedicated. Beardsley v. Chapman, 1 Ohio St. 118, applied.

2. SAME.

A city by deed in fee conveyed certain lots to a building committee in trust, empowering them, in their discretion, either to sell the lots and convey a fee simple to the purchaser, to exchange the lots for others, or to use them for the erection of a courthouse, and then donate them to the county commissioners. The building committee erected a courthouse upon one of the lots, and then conveyed the same by deed in fee to the commissioners. *Held,* that the title could not be considered as passing directly from the city to the commissioners, so as to deprive the latter of the benefits of the occupying claimant's law upon ejectment under title paramount, for the committee was not a mere conduit for passing the title, but was invested with a discretion as to the use of the lots, and therefore with authority to exercise the attributes of ownership.

3. SAME—VALUATION OF IMPROVEMENTS.

Under the occupying claimant's law of Ohio, the value of improvements is to be ascertained, not by their cost, but by the added value which they give to the real estate for the use and enjoyment thereof by the lawful owner. Van Bibber v. Williamson, 37 Fed. Rep. 756, followed.

4. SAME—WORDS OF INHERITANCE.

The common-law rule (existing in Ohio) that the omission of the word "heirs," in the granting and habendum clauses of deeds to natural persons, vests in the grantee a life estate only, is subject to an exception when upon the face of the deed it appears that the conveyance is made in trust for a use, the full performance of which requires the vesting of a fee in the trustee; and where a city by such a deed conveys lots to a building committee in terms empowering them, in their discretion, either to sell the lots and convey a fee simple to the purchaser, to exchange the lots for others, or to use them for the erection of a courthouse, and then donate them to the county commissioners, such deed must be held to convey a title commensurate with the purposes of the trust, namely, a fee simple.

5. MUNICIPAL CORPORATIONS—DEEDS—EXECUTION.

Rev. St. Ohio 1880, § 4106, requiring that every deed shall be signed and sealed by the grantor or maker, does not apply to deeds made by municipal corporations, and their deeds, if executed according to the mode prevailing at common law, are sufficient to pass title. Therefore a deed in which the testatum clause reads as follows is sufficient: "In witness whereof the said city of Youngstown and the city council have caused William M. Osborn, mayor aforesaid, to subscribe his name, and have caused the corporate seal of said city to be affixed, to these presents. William M. Osborn, Mayor. [City of Youngstown Seal.]" Sheehan v. Davis, 17 Ohio St. 571, followed. Tiffin v. Shawhan, 1 N. E. Rep. 581, 43 Ohio St. 178, distinguished.

At Law.

Statement by TAFT, Circuit Judge:

This was an action in ejectment by Young against the commissioners of Mahoning county to recover lot No. 96 on the original plat of the town of

Youngstown, which is now occupied by the courthouse and other county buildings of Mahoning county. The case was submitted to the court on the evidence, a jury being waived, and the court held that the plaintiff was entitled to recover the land. The opinion is reported in 51 Fed. Rep. 585. Judgment was entered for the recovery of the land, and for mesne profits, on the 25th day of July, 1892. Thereupon the defendants filed a petition for the benefits conferred, by section 5786 of the Revised Statutes of Ohio, upon occupying claimants. A jury having been impaneled, and evidence introduced, the question arose whether, conceding the absence of fraud or collusion in the county commissioners or their grantors in the erection of the buildings upon the lot, they had such color of title as to give them a right to claim the value of the improvements under the occupying claimant law.

The facts fully appear in the report of the case of Young v. Commissioners, 51 Fed. Rep. 585. It is sufficient to state here that lot No. 96, in question, together with lot No. 95, were originally used by the city of Youngstown as a burying ground, under a common-law 'dedication by John Young, the ancestor of the plaintiff, Charles Young; that, in 1867, Charles Young conveyed to the city of Youngstown a legal title to said lots 95 and 96, which, in the opinion already referred to, the court held to be a determinable or base fee, with a reverter to the grantor on a lawful abandonment by the city of the lot for burial purposes; that by ordinance forbidding the interment of further bodies in the lot, and ordering the removal of those already interred there, the city lawfully abandoned the lot as a burying ground about 1870; that Charles Young, a nonresident of the state, had no knowledge of such abandonment until shortly before the bringing of this suit, in 1889; that the city remained in possession of the lot until 1875; that in 1874 an act of the legislature was passed providing that, on compliance with certain conditions, the county seat of Mahoning county should be removed from Canfield to Youngstown; that one of the conditions was that the citizens of Youngstown should provide a suitable lot in the city of Youngstown, and erect thereon a courthouse, to cost not less than $100,000, and should donate the same to the county commissioners for use as a courthouse; that in compliance with this condition the citizens of Youngstown raised a fund somewhat exceeding $100,000, and placed it in the hands of a building committee consisting of five citizens, Chauncey H. Andrews, Joseph H. Brown, Hugh B. Wick, Matthew Logan, and Henry Tod, that they might erect a courthouse, within the terms of the act; that the council of the city of Youngstown by ordinance directed the mayor by proper conveyance to convey these lots to the building committee; that the mayor accordingly signed and acknowledged a deed which, in the name of the city as grantor, purported to convey to the building committee and their successors forever, in trust, in fee simple, lot No. 95 and lot No. 96, with power to sell either or both if they should see proper, and devote the proceeds thereof to the purchase of another lot suitable for a courthouse, or to exchange said lots, or either of them, for another lot, or to use said lots, or either of them, as a courthouse lot, and, when so used, to convey the same to the county commissioners in accordance with an act of the legislature under which the courthouse was to be erected. The word "heirs" did not follow the names of the grantees as a word of limitation, either in the granting or habendum clause of the deed. The testatum clause read as follows: "In witness whereof the said city of Youngstown and the said council have caused said William M. Osborn, mayor aforesaid, to subscribe his name, and have caused the corporate seal of said city to be affixed, to these presents. William M. Osborn, Mayor. [City of Youngstown Seal.]" The acknowledgment was in the name of William M. Osborn as mayor, and in the name of the city of Youngstown.

The deed was executed March 30, 1875. Somewhat more than $100,000 was spent in the erection of the courthouse upon lot No. 96. By deed of August 10, 1876, the building committee by proper deed conveyed to Joseph M. Jackson and others the fee to said lot No. 96, with the improvements thereon, in consideration of $10. The county commissioners took possession, and themselves added improvements costing upwards of $15,000. The county has been in possession of the courthouse ever since.

A. W. Jones, George F. Arrel, and Disney Rogers, for county commissioners.

F. E. Hutchins and Sanderson & Norris, for Young.

Before TAFT, Circuit Judge, and RICKS, District Judge.

TAFT, Circuit Judge, (after stating the facts.)    The persons who may have the benefit of the occupying claimant law are pointed out in section 5786 of the Revised Statutes of Ohio, which reads as follows:

"Sec. 5786. A person in the quiet possession of lands or tenements, and claiming to own the same, who has obtained title thereto, and is in possession of the same, without fraud or collusion on his part, shall not be evicted or turned out of possession by any person who sets up and proves an adverse and better title, until the occupying claimant or his heirs are fully paid the value of all the lasting and valuable improvements made on the land by him, or by the person under whom he holds, previous to receiving actual notice by the commencement of suit on said adverse claim, whereby such eviction may be effected, unless such occupying claimant refuse to pay to the person so setting up and proving an adverse or better title the value of the land without improvements made thereon as aforesaid, upon demand of the successful claimant or his heirs, as hereinafter provided, when (1) such occupying claimant holds a plain and connected title, in law or equity, derived from the records of a public office; or (2) holds the same by deed, devise, descent, contract, bond or agreement, from and under a person claiming title as aforesaid derived from the records of a public office, or by deed duly authenticated and recorded; or (3) under sale on execution, against a person claiming title as aforesaid derived from the records of a public office, or by deed duly authenticated and recorded; or (4) under a sale for taxes authorized by the laws of this state, or the laws of the territory northwest of the Ohio river; or (5) under a sale or conveyance made by executors, administrators, or guardians, or by any other person or persons, in pursuance of an order of court or decree in chancery, where lands are or have been directed to be sold."

It is clear that the county commissioners in this case do not come within the section just quoted unless, in accordance with subdivision 2, they have been in quiet possession of the courthouse lot, "by deed * * * from and under a person claiming title as aforesaid * * * by deed duly authenticated and recorded." It has been held by the supreme court of Ohio in Beardsley v. Chapman, 1 Ohio St. 118, that the words "by deed duly authenticated and recorded" mean a deed to a person under whom the occupant claims, and not a deed to the occupant himself; and in the same case it was held that the deed to the occupant and the deed to the grantor of the occupant must both apparently convey an estate which would justify the holder of it in making permanent and lasting improvements. It was held as a corollary that an occupying claimant will not be presumed to know any defects or recitals that appear in deeds prior to that under which his grantor holds. It follows that the county commissioners must show a title in them by a deed in fee to them from a grantor whose title was also by a deed in fee; and the question here to be decided is whether the deeds introduced in evidence comply with this requisite of the statute.

Counsel for Young contend that the commissioners did not come within section 5786, for the following reasons: (1) Because the deed from the city to the building committee was not properly executed to the city, so as to pass any title whatever to the committee. (2) Because the deed, not containing the word of limitation, "heirs," in the granting or habendum clause, conveys only a life estate, which un-

v.53F.no.9—57

der the decision in Beardsley v. Chapman, 1 Ohio St. 118, would not authorize the erection of lasting and permanent improvements. (3) Because the deed from the city is void on its face for want of power in the city to make such a conveyance. (4) That the deeds from the city to the building committee, and from the building committee to the county commissioners, constitute in fact but one conveyance from the city to the commissioners, the building committee being a mere conduit for the title; that the city is the real grantor of the county commissioners, and, as the deed to the city has already been found defective by the judgment of the court, the applicants do not come within the statute, because presumed in law to know of such defect.

First. We think the deed from the city to the building committee was properly executed. The mayor did not act as an attorney in fact for the city in the making of the deed. The deed was the deed of the city, which must be executed by some agent or representative of the city designated to act as such. The deed was not in the name of the mayor, but of the city.

It is contended that in order to operate as the deed of the city it should be signed in the name of the city by William M. Osborn, mayor, to comply with that section of the statute in force at the time this deed was executed, and embodied in section 4106 of the Revised Statutes of 1880, (Swan & C. St. p. 459, § 1,) which requires that every deed shall be signed and sealed by the grantor or maker. It has been held by the supreme court of Ohio that section 4106 of the Revised Statutes of 1880, upon which counsel for Young rely, has no application to the execution of deeds by corporations, and that therefore deeds by corporations do not need to be signed; that the mode of executing a deed by a corporation prevailing at common law is sufficient to pass the title of a corporation to land in Ohio. Sheehan v. Davis, 17 Ohio St. 571. In the same case it is said that, at common law, corporations aggregate execute deeds by affixing thereto their corporate seal. The supreme court there held that a deed of conveyance by a banking corporation was properly executed when the cashier, on behalf of the bank and on its authority, affixed thereto the corporate seal, and subscribed his name as cashier, and that in such case the cashier was the proper person to acknowledge the deed. The deed was in the name of the banking corporation. The testatum clause read as follows: "In witness whereof the said party of the first part have caused their corporate seal to be hereto affixed, and these presents to be signed by the cashier, on the day and year first above written. H. H. Martin, Cashier,"—and in the acknowledgment he acknowledged the same as the free act and deed of the bank. The case is on all fours with the case at bar, and leaves no question as to the sufficiency, so far as concerns its execution, of the deed from the city to the building committee. The case of Tiffin v. Shawhan, 43 Ohio St. 178, 1 N. E. Rep. 581, does not modify in any way the ruling in Sheehan v. Davis. In the Tiffin Case the clerk of the city was ordered to make a proper conveyance of the land of the city. The deed was in his name as clerk, and the seal attached was not the seal of the city, but the official seal of the clerk. The court held that

the authority which he had was not properly complied with, and that the deed was defective. In the case at bar the seal used was the corporate seal of the city of Youngstown. The deed was in the name of the city, was executed in its name, and was acknowledged in its name. The authority conferred upon the mayor to act as the right hand of the city in the execution of the deed was fully and properly complied with.

Second. The next objection by counsel for Young is that the deed from the city, not containing the word "heirs" as a word of limitation upon the estate conveyed, did not vest in the building committee a fee. It is true that in Ohio, as at common law, the omission of the word "heirs" in the granting and habendum clauses of deeds to natural persons vests in the grantee a life estate only; but there is an exception to this rule when, upon the face of the deed, it appears that the conveyance is made in trust for a use, the full performance of which requires the vesting of a fee in the trustee and grantee. In such a case the deed conveys a fee commensurate with the necessities of the trust imposed by the terms of the deed, and this, if so conveyed, is a legal estate, and is not cognizable alone in equity. In Neilson v. Lagow, 12 How. 98, the action was one of disseisin at law, and one question in the case was whether a deed of the land in controversy to trustees and their successors in trust to sell and convey in fee simple absolute, without the word "heirs" in either the habendum or granting clause, conveyed to the trustees a fee simple. The supreme court held that it did. Said Mr. Justice Curtis, (page 110:)

"Now, in looking into the deed from the bank to the trustees, we find that the grant is to them and their successors in trust to sell, and convey a fee simple absolute. The legal estate, being in trust, must be commensurate therewith, and will be deemed to be so without the use of the usual words of limitation. Newhall v. Wheeler, 7 Mass. 189; Stearns v. Palmer, 10 Metc. (Mass.) 32; Gould v. Lamb, 11 Metc. (Mass.) 84; Fisher v. Fields, 10 Johns. 505; Welch v. Allen, 21 Wend. 147. As the execution of the trust required the trustee to have the fee simple in order to convey one, we are of opinion that the deed to them conveyed a fee, and consequently we cannot infer that the state court decided that only a life estate passed by the deed."

This case is approved in Webster v. Cooper, 14 How. 498, and in Lessee of Poor v. Considine, 6 Wall. 471. The latter case came up from Ohio. The deed from the city to the trustees did not contain the word "heirs" as a word of limitation, but it expressly described the estate intended to be conveyed as one in fee simple, and it empowered them to sell the lots, and convey to the purchaser a fee simple; and also gave them power to exchange the lots for others, or to use them for the erection of a courthouse, and to donate them to the county commissioners. It is perfectly obvious that in the execution of any of these powers it was necessary that the trustees should have an estate in fee simple. It therefore follows, under the authority cited, that the deed to them conveyed a fee simple.

Third. The next objection is that the deed was void upon its face for want of power in the city to make conveyance of the land. If the city could hold any land in such a way that they might convey it as this land was conveyed, then the deed was not void upon its face for the purposes of this discussion, because in the erection

of the improvements the occupying claimant is not bound to look beyond the recitals of the deed to his grantor. He is not bound, therefore, to see how the city derived title in this case to the property, and he may assume that, if it were within the corporate power of the city to hold any land which it might dispose of by deed in this way, the land conveyed by the city was of that character. By section 2673, Rev. St., which was in force at the date of the execution of the deed from the city to the building committee, it is provided that the council of any city or village may, upon recommendation of the board of improvements or board of public works, lease or convey, in such manner and for such sum as may be provided by ordinance, any real estate or interest therein, wharf or public landing, or any buildings or parts thereof, and also dispose of any material from any street, alley, avenue, sewer, bridge, ship canal, public grounds, or park belonging to the corporation. Under this section the very deed under consideration was held by the supreme court of Ohio to pass the legal title to the building committee. Newton v. Board, 26 Ohio St. 618--628. The inadequacy of the consideration was held not to affect the passing of the legal title. It was intimated that if the city, or the citizens thereof, permitted the building committee to erect improvements costing $100,000 upon the lot thus conveyed, they would be estopped to claim any interest in the land, even if they might recover the money value of the land for the benefit of the city.

Fourth. Another objection is that the deed to the building committee, and the deed of the committee to the county commissioners, made up but one deed, the building committee being a mere conduit, so that under the occupying claimant law the county commissioners are charged in law with knowledge of the defect in the deed from Young to the city, already found to exist by this court. We cannot agree with this view of the two deeds. The lot was not conveyed through the building committee as a mere conduit of title to the county commissioners. The lot was conveyed to the building committee that they might sell it, or that they might erect a building upon it,—that they might exercise the highest attributes of ownership over it. The fee vested in the committee absolutely, and it remained in them for more than a year. We are asked by counsel for Young whether the two deeds formerly necessary under the laws of Ohio to convey land from a husband to a wife, through a naked trustee as the conduit of a title, would bring the wife, on subsequent ouster by superior title, within the terms of the occupying claimant statute. It is not necessary for us to decide that question, for, as we have said, the committee is not a mere conduit, charged with the simple duty of conveying the lot to the county commissioners.

The building committee held under the deed of the city duly authenticated and recorded, and the county commissioners hold by deed of the building committee, and that literally brings the commissioners within the statute. The statute is an equitable one, and should be so construed. Said Judge Read, in Lessee of Davis v. Powell, 13 Ohio, 308--320.:

"The statute is to be so construed, whenever a case comes within its letter, that the person receiving the benefits and advantages of the improvements shall make compensation. It rests on the broadest equity, and in the language of the court in Longworth v. Wolfington, 6 Ohio, 10, 'may justly claim a liberal construction.' The court in that case say: 'The law of this state is framed to cover every case where a party is evicted from the possession of lands which he has improved in the faith that he was the owner.'"

See, also, Harrison v. Castner, 11 Ohio St. 339.

As the county commissioners do bring themselves within the letter of the statute, we see no reason why, by construction, they should be excluded from its benefits.

For the foregoing reasons the court will instruct the jury that the two deeds in evidence, in the absence of bad faith or collusion, entitle the county commissioners to the benefits of the occupying law, and that they should find the value, at the date of the entry of judgment of ouster herein, July 25, 1892, of the lands with the improvements and the lands without the improvements. The value of the improvements is not their cost, but the added value which they give to the real estate for the use and enjoyment of such real estate by the lawful owner, Charles Young. This is expressly decited by Judge Jackson in Van Bibber v. Williamson, 37 Fed. Rep. 756, a case arising under the statute which we are now considering.

NOTE. The jury returned a verdict finding the land to be worth $10,500, and the land with the improvements $60,500, which verdict was confirmed by the court.