QUILL, Cty. Treas., Appellee,

v.

R.A. INVESTMENT CORPORATION et al., Appellants.

[Cite as *Quill v. R.A. Investment Corp.* (1997), 124 Ohio App.3d 653.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16639.

Decided Dec. 31, 1997.

654

*C. Robert Swaninger,* for appellee.

*Dwight D. Brannon,* for appellant, CFX Properties, Inc.

*Mark H. Klusmeier,* for appellees, R.A. Third Street, LLC and Harriet B. Collins.

BROGAN, Judge.

CFX Properties, Inc. ("CFX"), appeals from a decision of the Montgomery County Court of Common Pleas granting partial summary judgment in favor of appellees, RA Third Street and Harriet Collins (hereinafter collectively referred to as "RA") and denying partial summary judgment to CFX. Under a ninety-nine-year ground lease, renewable forever, RA held the lessor's interest and CFX was the lessee. The trial court found that CFX's failure to pay rent and taxes breached their covenants under the lease and permitted RA to terminate the agreement. The trial court read a provision granting CFX a right of cure as predicating that right upon certain actions by RA, which, as lessor, it could perform or not, at its option. Because RA did not so act, the trial court found CFX had no rights under the provision. We find, to the contrary, that the lease agreement defined and limited RA's rights in the event of a breach by CFX, and that RA was required to trigger the cure provisions to begin the process of terminating the lease. Judgment is rendered accordingly.

## I

The essential facts of the case are not in dispute. At issue is a parcel of land located at the southeast corner of Third and Jefferson streets in downtown Dayton. In 1914, the predecessors in interest to the two parties in this appeal executed a ground lease of the parcel for a term of ninety-nine years, renewable forever. The lessee of the property constructed a building, commonly known as the "Brunner Building," upon both this parcel and a different, adjoining parcel owned in fee simple by the lessee. The building was constructed so that approximately eighty-eight percent sat upon the parcel governed by the ground lease and twelve percent upon the adjoining land. CFX now holds the lessee's interest together with the fee simple interest in the adjoining land. RA is successor in interest to the original lessors.

The 1914 ground lease required the lessee to pay rent of $5,000 per year for the first fifteen years and $5,500 dollars each year thereafter, in quarterly installments. The lessee also agreed to pay all taxes levied against either the land or any buildings constructed upon it. If the lessee left rents or taxes unpaid for sixty days or more, the lease permitted the lessors "at their option and after notice thereof given to said lessee to enter into possession of said premises and all improvements thereon and the same to have and to hold as in their first and former estate." If, after the lessor had repossessed the property, the lessee satisfied its unpaid expenses and paid interest and certain costs to the lessee, the lease granted that "immediate possession shall be given to the lessee." However, the lease provided that if two years passed after repossession and the lessee had not met its debts, the property and all buildings constructed upon it would forfeit to the lessor.

Beginning with the half-year estate tax bill due in July, 1990, Brunner Company Building Associates ("Brunner"), which then held the lessee's interest, failed to pay the real estate tax on the property. Beginning in November of 1991, Brunner failed to pay the quarterly rent. Sometime thereafter CFX, which held a general partnership in Brunner, succeeded to Brunner's interest in the lease. Arrearages for taxes and rent accumulated to over $300,000.

On August 30, 1994, the Montgomery County Treasurer, Hugh M. Quill, filed the instant action in the common pleas court seeking a tax foreclosure against RA and number of other parties who the treasurer thought might have an interest in the property. RA filed cross-claims against Brunner Associates and several other parties. The case was submitted to a magistrate on December 20, 1994. CFX was not added as a necessary party until October of 1995.

On July 10, 1996, RA filed two partial summary judgment motions asking for damages from the breach of the lease covenants and asking for possession of the

property. CFX responded and filed its own motion for partial summary judgment on the question of whether it had a right to cure its breaches of covenant under the lease. On December 5, 1996, the magistrate rendered a decision granting partial summary judgment to RA and denying the same to CFX. The court adopted that decision and overruled CFX's objections to it in an order entered May 28, 1997. The court amended that order on June 2, 1997. In its amended order, the court entered a judgment granting RA possession of the property at issue and awarding damages to RA in various amounts against several defendants, including $262,580.74 against CFX, $166,557.52 of which was to be satisfied only from CFX's partnership interest in Brunner Associates. The court's order also certified that the judgment was final, pursuant to Civ.R. 54(B) and that there was no just cause for delay. CFX now appeals from this judgment.

## II

CFX raises as its first assignment of error the following:

"The lower court erred when it awarded Appellees damages and possession of the entire building and parcel located on the eighty-eight percent parcel of land when under the Ohio Revised Code § 5303.08 *et seq.* Appellees would be required to either pay for the improvements made by appellant or accept payment by appellant for the value of the eighty-eight percent parcel less the costs of improvements."

R.C. Chapter 5303, cited by CFX, is Ohio's "Occupying Claimant Law." Ohio law has provided statutory protection for occupying claimants, as codified in this chapter, in some form, for over one hundred seventy years. See *Case of Martin* (1823), 1 Ohio 156, 1823 WL 10. Current R.C. 5303.08 provides as follows:

"A person who, without fraud or collusion on his part, obtained title to and is in the quiet possession of lands or tenements, claiming to own them, shall not be evicted or turned out of possession by any person who sets up and proves an adverse and better title, until the occupying claimant, or his heirs, is paid the value of lasting improvements made by the occupying claimant on the land, or by the person under whom he holds, before the commencement of suit on the adverse claim by which such eviction may be effected, unless the occupying claimant refuses to pay to the party establishing a better title the value of the lands without such improvements, on demand by him or his heirs * * *."

Appellant argues that it was an occupying claimant under this statute and, therefore, was due compensation for the improvements made upon the property.

The trial court found that CFX had neither title nor a claim of ownership in the real estate to qualify under the statute. It found that CFX's

interest was a leasehold and, therefore, did not qualify. As a matter of law, this finding appears to be in error. A ninety-nine-year lease, renewable forever, or a "perpetual lease," was "given a special status at common law which status has carried over into the law of Ohio." *Evans Inv. Co. v. Limbach* (1988), 51 Ohio App.3d 104, 106, 554 N.E.2d 941, 943. "It is a leasehold estate in name and in form only." *Ralston Steel Car Co. v. Ralston* (1925), 112 Ohio St. 306, 312, 147 N.E. 513, 515. It is, instead, a form of freehold estate under Ohio law. *Id.* at syllabus, first paragraph. For most purposes under Ohio law, the holder of a perpetual lease is treated as the owner of the estate. See, *e.g.*, *id.* (holding that interest created by a perpetual lease was subject to the law of descent); *Welfare Federation of Cleveland v. Glander* (1945), 146 Ohio St. 146, 169, 32 O.O. 65, 75, 64 N.E.2d 813, 823 (holding that interest was ownership for taxation purposes); *Park Inv. Co. v. Cuyahoga Cty. Bd. of Revision* (1962), 115 Ohio App. 523, 526, 21 O.O.2d 170, 171–172, 179 N.E.2d 784, 786–787 (holding that lessee had the rights of an owner under former R.C. 5717.05). We have no cause to believe that the protection of R.C. Chapter 5303 would not, under this long-standing rule, extend to a the holder of a perpetual lease.

 Nevertheless, the court did not err in finding that CFX could not assert the protections of the statute in the case *sub judice*. The provisions of the Occupying Claimants Law do not apply to a party who knows that his interest may terminate upon some condition or event. *Bartholomew v. Rothrock* (App. 1935), 21 Ohio Law Abs. 57, 58. Such a party cannot assert ownership against the other party lawfully exercising its reversionary, executory, or remainder interest. Thus, the law will not operate to protect a life tenant against a remainderman, *Beardsley's Lessee v. Chapman* (1853), 1 Ohio St. 118, 124, 1853 WL 4, one co-tenant against another with right of survivorship, *Taylor v. Foster's Admr.* (1871), 22 Ohio St. 255, 268, 1871 WL 31, or the holder of a determinable fee against a reverterman, see *Young v. Mahoning Cty. Commrs.* (1892), 7 Ohio Fed. Dec. 324, 53 F. 895. CFX was aware that its interest could be forfeited to RA upon its breach of the lease covenants. In this regard, the provisions of R.C. 5303.08 did not apply to CFX, and it is due no compensation thereunder.

### III

We take CFX's third assignment of error next. CFX asserts:

"The lower court erred when it ruled that Appellant could not cure any default in arrearages of lease payments under the terms and conditions of the lease."

CFX makes two distinct arguments in connection with this assignment.

## A

First, CFX asserts that, as lessee, it has a right to cure contained within the following lease provision, which is structured as a single, very complex sentence:

"It is further covenanted and agreed that lessors shall have the first lien upon every right and interest of the lessee to or in the said premises and the improvements thereon, to secure the payment of said rents and the performance of leases covenants herein and if at any time the rent aforesaid reserved or any part thereof or any taxes, assessments, rates or charges against said premises or any liability for damages as aforesaid all as herein before provided shall be in arrear or unpaid for a period of sixty days after same shall have accrued or become due and payable, or if lessee for said period shall otherwise fail to faithfully keep and perform any other covenant or agreement herein contained then lessors may at their option and after notice thereof given to said lessee enter into possession of said premises and all improvements thereon and the same to have and to hold as in their first and former estate until said rents, taxes, assessments, rates, charges, or other liability as hereinbefore specified remaining due and unpaid together with all costs and charges expended in obtaining possession of said premises or for their uses, improvement and repair or incident to the operation and management thereof as well also as interest upon the several sums that may so remain unpaid or be so expended shall be fully satisfied and repaid to said lessors, and upon full discharge of all such liability as aforesaid immediate possession shall be given to lessee, provided, however, that if said liability of lessee as aforesaid shall not within two years after possession is taken by lessors be fully discharged then this lease and everything herein contained on lessor's behalf to be done and performed shall at lessors option cease, determine and be utterly void and it shall be lawful for lessors to enter upon said premises with the appurtenances or any part thereof in the name of the whole and the same to occupy and repossess as though this demise had not been made and in that event all buildings or other structures put or erected upon said premises shall be and remain the property of lessors."

The trial court found that the lessee's right to cure in this provision ("upon full discharge of such liability as aforesaid immediate possession shall be given to the lessee") was not invoked until the lessors exercised their right of possession after giving notice thereof. The court found that repossession of the property by lessors was a right they exercised at their option ("if at any time the rent * * * or any taxes * * * shall be in arrear or unpaid for a period of sixty days * * * lessors may *at their option* and after notice thereof * * * enter into possession of said premises"). (Emphasis added.) Because RA, as lessor, did not exercise its option to repossess, the court reasoned, CFX had no right of cure. It found further that CFX had breached its obligations under the lease. Thus, it found

that RA had the right to terminate the agreement. It concluded that RA could do so without taking possession, giving notice thereof, or granting CFX two years to cure its arrearages.

We find that this interpretation of the above-quoted clause is in error. The construction of written contracts and instruments of conveyance is a matter of law to be reviewed *de novo* by an appellate court. *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949, 951–952. Moreover, a determination on a summary judgment motion is also reviewed de novo. *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 552, 671 N.E.2d 317, 320. Reviewing the lease agreement afresh, we find that this provision defines and limits the remedies of the lessors in the event of a breach by the lessee. Ohio courts recognize that such cure provisions are lawful and may be enforced. See, *e.g., Gallagher v. Borden, Inc.* (1992), 84 Ohio App.3d 185, 188, 616 N.E.2d 577, 578–579 (enforcing lease provision that required lessor to give specific notice of default before lessee's right to cure was triggered and holding that right to cure prevented termination of lease). Under the lease agreement, RA's first step in exercising its rights was to give notice and take possession of the property. Not having done so, they cannot bypass this provision and have the lease declared terminated.

Thus, it was not RA's option to either take possession after notice and then suffer a two-year term of potential cure or, in the alternative, merely terminate the lease immediately and recover all improvements and appurtenances as in a forfeiture. Such an interpretation renders the whole cure provision a nullity. A right to cure exercised at an opposing party's option is no right at all. "In construing a written instrument, effect should be given to all of its words if this can be done by any reasonable interpretation." *Mapletown Foods, Inc. v. Motorists Mut. Ins. Co.* (1995), 104 Ohio App.3d 345, 348, 662 N.E.2d 48, 49. The clause at issue has effect only if it is understood as defining the lessors' rights after a breach. In light of the severe forfeiture provisions following a failure to cure ("all buildings or other structures put or erected upon said premises shall be and remain the property of lessors"), we find this interpretation of the lease both more reasonable and more consonant with the plain language of the agreement.

Under the interpretation advanced by RA and accepted by the trial court, the lessors would have been permitted to terminate the lease at any time, if the lessee was late in paying rent or taxes. Clearly, the original parties to the agreement foresaw that such an arrearage might occur sometime during the lease's potentially infinite term. The cure provision, as we understand it, protected the lessee's future investment in buildings or other improvements against his own mistake or future short-term economic ill fortune. Such a

provision was a useful and sensible precaution when one considers the extent of the estate transferred to the lessee under a perpetual lease.

RA contends that the phrase "at their option," which precedes the description of the lessors' right of possession, demands the construction reached by the trial court. We interpret that phrase, however, as establishing that the lessors' right of possession was conditioned upon their own action, as with a right of reentry, rather than automatic upon lessee's breach, as with a possibility of reverter. Here, the agreement drew a distinction that is important elsewhere in the law of real property. See, e.g., *Willis v. Hannah* (1966), 9 Ohio Misc. 221, 224, 38 O.O.2d 396, 398, 224 N.E.2d 769, 772 (holding that a deed created an automatic reverter rather than a right of reentry). In the context of this agreement, the provision established a single, distinct event, of which both parties would be aware, before the rights of possession would change. Thus, at no time would one party hold actual possession of the land while the other party held the rights of possession.

RA also argues that the two-year period of cure under the lease has already expired. Thus, RA reasons that it has full right to possession under any interpretation of the cure provision. The lease agreement, however, clearly states that the two-year period does not begin until "after possession is taken by lessors." RA does not dispute that it has not taken possession of the building. This argument, therefore, is unavailing. CFX's two-year term of cure does not begin until RA takes possession under the agreement.

In accordance with the foregoing construction of the lease agreement, we sustain CFX's third assignment of error. The lower court erred in failing to grant summary judgment in favor of CFX on the question of its right to cure. It also erred in granting possession of the property to RA unencumbered by CFX's right to reenter its perpetual leasehold estate after full cure, if accomplished within two years after RA takes possession. The court also erred in awarding damages to RA. Nevertheless, the court did not err in granting possession of the property to RA. Under the lease agreement, RA has the right of present possession until CFX cures its arrearages as defined under the agreement.

## B

CFX's second argument in connection with this assignment of error, contends that CFX has the right to purchase the land governed by the ground lease. CFX cites the following provision in the agreement:

"It is further agreed that lessee being at the time without default as to any of the covenants by him entered into herein, shall have the right and option to purchase said premises at any time after twenty years from said May 1st. 1918

for the sum of One Hundred Thousand ($100000.00) Dollars, that in order to avail himself of such option of purchase the lessee shall give written notice of his intention so to purchase and said purchase price shall be paid to lessors and a deed in fee simple be delivered to lessee within thirty days after the expiration of said six months, and thereupon all rents shall cease."

 This provision makes clear that the lessee may not exercise its option to purchase unless he is "without default as to any of the covenants." Because CFX still owes rent and taxes, it is in default of the covenants requiring the lessee to make those payments. Until CFX remedies its status of default, it may not exercise this option and it cannot cure its breach by purchasing the property. The trial court, therefore, did not err in not granting judgment for CFX on this basis.

## IV

Because we have sustained CFX's third assignment of error, its second assignment is rendered moot. RA, however, has submitted a cross-assignment of error under App.R. 3(C)(2), seeking to support the judgment below on grounds not relied upon by the trial court. In its first assignment, RA asserts:

"The trial court erred to the prejudice of appellants RA Third Street, LLC and Harriet B. Collins by failing to enforce the provisions of Civil Rule 6 and by failing to prevent the unauthorized practice of law by appellant's non–attorney president."

RA argues that CFX failed to file its cross-motion for partial summary judgment and its response to RA's motion in a timely fashion. The sequence of events relevant to this argument is as follows. On April 12, 1996, the magistrate set a deadline of July 10 for all summary judgment motions. RA filed two motions for partial summary judgment on July 10, the last available day. Under Montgomery County Local Rule 2.05(II)(B)(2), responses were due within fourteen days. On August 6, the magistrate extended the response time for CFX until August 12. CFX duly filed its motion and response on August 12. RA then moved the trial court to strike the both filings, and its motion was overruled. RA now contends that these filings were untimely and against Civ.R. 6(B).

Civ. R. 6(B) provides, in relevant part:

"When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon

motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * *."

As a general matter, "the granting of leave to file an untimely motion for summary judgment is discretionary with the trial court." *Brinkman v. Toledo* (1992), 81 Ohio App.3d 429, 432, 611 N.E.2d 380, 382. Rule 6(B) does require, however, that untimely filings be made upon a motion and that, if such a motion is made after the deadline, there be some showing that the neglect was excusable. See *Miller v. Lint* (1980), 62 Ohio St.2d 209, 214, 16 O.O.3d 244, 247, 404 N.E.2d 752, 755. In this case, RA's own last-minute filing, the relatively short period of delay and the absense of any prejudice to RA from the delay were all indications that CFX's neglect was excusable. Upon this record, we are not able to find an abuse of discretion in the trial court's allowance of late filings. This argument is, therefore, unavailing.

RA also argues that CFX filed its objections to the magistrate's decision improperly. Civ.R. 53(E)(3) requires a party to file its objections to a magistrate's decision within fourteen days. The rule also forbids a party to assign as error on appeal any finding of fact or conclusion of law to which it has not objected. RA contends that CFX's objections should have been stricken and thus cannot form the basis for its appeal.

The sequence of events involving CFX's objections is as follow. On December 5, 1996, the magistrate filed the decision granting partial summary judgment to RA. On December 18, Hysh Shtayyeh, CEO of CFX, filed with the trial court a document labeled "Objections to Report and Recommendations of Magistrate," in which he requested a thirty-day extension and explained that CFX was seeking new counsel. On December 23, RA moved to strike this filing as an illegal attempt by a nonattorney to represent a corporation. On January 31, 1997, new counsel for CFX moved the court for a thirty-day extension, which was granted by an order entered that day. That extension period expired on March 3. On March 24, counsel for CFX filed its objections together with a motion for leave to file. The court eventually considered CFX's objections, overruled them, and adopted the magistrate's report.

RA contends that the March 24, 1997 objections were untimely. It contends further that CFX's filing of December 18, 1996 was an illegal filing by one engaged in the unauthorized practice of law. Our review of the record below shows that RA never moved to strike as untimely the objections filed on March 24; it only moved to strike to document filed on December 18 on the grounds noted above. The timeliness of Civ.R. 53(E) objections is an issue properly committed to trial courts. *Leffel v. Leffel* (Oct. 24, 1997), Clark App. No. 97–CA–20, unreported, at 6, 1997 WL 666102. Having failed to raise the issue of

timeliness below, a party may not do so on appeal. See *id.* Moreover, the validity of the December 18, 1996 filing by Shtayyeh is a question that has no bearing on the outcome of this appeal. Accordingly, RA's cross-assignment of error is overruled.

## V

Because we have found error below upon appellant CFX's third assignment of error, following with that analysis, we reverse that part of the judgment below overruling CFX's motion for partial summary judgment on the issue of its right to cure. We affirm the award of present possession of the real estate to RA, but that possession is subject to the renewal of CFX's perpetual leasehold in accordance with the cure provision of the agreement. We further reverse the award of damages against CFX. Because matters below are still pending below, we remand the cause for further proceedings not inconsistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

WOLFF and FAIN, JJ., concur.