Motor Service Co., Inc., Appellant, *v.* Public Utilities
Commission of Ohio et al., Appellees.

[Cite as Motor Service Co. v. Pub. Util. Comm.
(1974), 37 Ohio St. 2d 1.]

(No. 73-462—Decided January 2, 1974.)

4

*Mr. Gerald P. Wadkowski,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Walter E. Carson,* for appellee.

*Mr. James Duvall,* for appellee Morgan Drive Away, Inc.

STERN, J. Although Motor Service has assigned several errors to the Public Utilities Commission's decision, the salient question raised is whether the commission acted reasonably and lawfully in finding compliance* with Item (d) of its 60-day order. We examine the record to ascertain if the commission's finding is either manifestly against the weight of the evidence, or is not supported by the evidence. *Kenton* v. *Pub. Util. Comm.* (1965), 3 Ohio St. 2d 71, 73.

Item (d) of the 60-day order required Morgan to acquire a permanent terminal in Clermont County by construction, purchase, or long-term lease. Morgan chose the last method, and contracted with its Clermont County agent, Eola Cochran, for the use of space in her home as a permanent terminal. That contract reads, in pertinent part:

"17. Agent hereby leases, lets and devises unto Morgan the premises hereinafter described for the term and for the considerations hereinafter specified:

"(a) Description. A certain office room located on the ground floor of agent's premises northwest corner.

"(b) Term. The term of this lease shall commence on December 13, 1969 and shall extend through the 12th day of December, 1970 subject to the right of either Morgan or agent to cancel this lease by giving 10 days written notice to the other party.

---

*In its opinion and order the commission refers to *substantial* compliance. The use of this adjective caused some confusion, and upon oral argument before this court the commission explained that, for the purposes of this case, any distinction between substantial and full compliance was of no moment. We agree. Further, we feel that such a distinction is useless insofar as determining compliance with *any* 60-day order, and therefore do not qualify the term "compliance" in this opinion.

6

"(c) Morgan agrees to pay as rental for said premises the sum of $25 per month each month during the term of this lease.

"(d) Agent agrees to maintain said premises free and clear of any expense to Morgan."

The commission based its finding of compliance with Item (d) upon a conclusion that this lease was "legal, valid and enforceable."

The record discloses the following unchallenged facts: Record title to the home wherein Eola Cochran and her husband reside is in Mr. Cochran's sister, Juanita Helton; there exists no written lease between the Cochrans and Mrs. Helton; in return for their paying mortgage installments, insurance premiums, and tax assessments on the property, Mrs. Helton has orally agreed to allow the Cochrans full use of the premises; the home insurance policy is in Mrs. Helton's name; and, an oral agreement exists between Mrs. Helton and Mr. Cochran that the property can only be sold with the latter's consent.

In view of these facts, we are unable to agree that the lease between Morgan and Eola Cochran was legal, valid, and enforceable. The Cochrans' legal interest in Juanita Helton's property, insofar as the record discloses, can only be a tenancy at will. See 51C Corpus Juris Secundum 461, Landlord and Tenant, Section 156; paragraphs 1 and 2 of the syllabus in *Say* v. *Stoddard* (1875), 27 Ohio St. 478. Since a tenancy at will is a determinable estate, and cannot be sublet, it follows that Morgan has no enforceable interest in the premises occupied by the Cochrans. See 49 American Jurisprudence 2d 471, Landlord and Tenant, Section 483, and cases cited therein. Further, we observe that while the parties to the purported sublease were Morgan and Mrs. Cochran, both Cochrans apparently held the property as tenants-in-common. Thus, a serious question might be raised by the failure of Mr. Cochran to join in any attempt to sublet the premises. We conclude that the commission's finding of compliance with Item (d) of its 60-day order is unsupported by the record, and is, therefore, unreasonable and unlawful.

The issue next raised is whether the commission's final order, denying a certificate to Motor Service, was so predicated upon its erronerous finding of compliance with Item (d) as to necessitate our reversal of that final order. The commission urges, as follows, that its decision should still stand:

"When the commission first considered the activities, or lack thereof, by Protestant Morgan Drive Away in Clermont County, they obviously concluded from the totality of the circumstances that the public convenience and necessity was not being served. But it is quite easy to see, that if three of the four requirements of the original opinion had been complied with, the absence of a permanent terminal in and of itself did [not] mean that the public convenience and necessity was still being ignored. And such a conclusion is clearly within the discretionary powers of this commission."

Since that argument is based upon a misconception of the statutory process wherein Motor Service's application was considered and rejected, we cannot subscribe to the commission's views.

R. C. 4921.12, read in conjunction with R. C. 4921.10, provides a two-tier process for the granting of a new certificate of public convenience and necessity in certain cases. Where an applicant seeks authority to furnish service over an irregular route or territory, and there exists a certificate holder already authorized to provide that service, the applicant must first show a need for its proposed additional operation. Such a showing by the applicant necessarily involves a demonstration that the service being offered by the existent carrier fails, in some respect, to adequately meet the public convenience and necessity. If the commission agrees, after notice and hearing, that the current certificate holder's service is deficient, the commission must afford the holder a reasonable time within which to improve its service before granting the applicant's request. In practice, an order is issued requiring the holder to remedy any deficiencies within 60 days. Thereafter, another hearing is held to determine whether that carrier has complied

with the commission's order. This compliance hearing represents the second tier of the process required by R. C. 4921.12.

Several decisions of this court add significantly to an understanding of the above process. *C., C. & C. Highway* v. *Pub. Util. Comm.* (1943), 141 Ohio St. 634, held, in the first paragraph of the syllabus:

"Where the Public Utilities Commission finds that public convenience and necessity require the service proposed by a motor transportation company which is an applicant for such a certificate and orders the expansion of the operations of another motor transportation company sufficient to provide the specified additional service upon and over the same route which that company is serving under its existing certificate of convenience and necessity, within sixty days thereafter, such order affects a substantial right of the latter carrier and gives rise to a right of appeal under the provisions of Section 544, General Code [R. C. 4903.13]." See, also, *D. G. & U. Truck Lines, Inc.,* v. *Public Utilities Comm.* (1953), 158 Ohio St. 564, and *Buchanan* v. *Pub. Util. Comm.* (1967), 9 Ohio St. 2d 155.

Although the *C., C. & C. Highway* case concerned the procedure prescribed by G. C. 614-87 (now R. C. 4921.10), it enunciates a principle equally applicable to R. C. 4921.12. A 60-day order is determinative of the fact that the public convenience and necessity is not being adequately served.

*Commercial Motor Freight* v. *Pub. Util. Comm.* (1951), 156 Ohio St. 360, makes clear that a 60-day order must state, with specificity, the ways in which an existing transporter's service is inadequate. The reasons for this are twofold: First, to fully apprise the motor carrier of how to improve his service, and thereby avoid the impending consequences of his failure to meet the public need; second, to enable this court to make a meaningful review of the commission's opinion and order, should that carrier choose to appeal the commission's determination before attempting compliance therewith.

If no appeal is taken from the commission's 60-day

order, a subsequent administrative hearing is held to discover whether the certificate holder has complied with the order. At this stage, the commission's scope of inquiry is limited to whether the deficiencies in service to the public, *as found in the first hearing and as particularized in the 60-day order,* have been corrected by the motor carrier. The commission is not free to waive any of the various requirements of its 60-day order, nor is it empowered to demand compliance beyond that required in the order. To do either would destroy the finality of the original determination that public convenience and necessity was not being adequately met by the certificate holder. This court's decisions in *C., C. & C. Highway* and *Commercial Motor Freight, supra,* as well as the procedure prescribed in R. C. 4921.12, do not permit the issue of public convenience and necessity to be redetermined at a compliance hearing. See, also, *Marks* v. *Pub. Util. Comm.* (1961), 171 Ohio St. 425.

Our conclusion is further buttressed by the commission's own language in *In re DeSaavedra* (1958), 81 Ohio Law Abs. 402:

"It is, therefore, the opinion of the commission that a carrier against whom a 'sixty-day' order has been issued, which carrier has failed to take exception to the provisions of the 'sixty-day' order by filing an application for rehearing in accordance with the provisions of Section 4903.10 R. C., must, at the time of compliance hearing, introduce sufficient evidence upon which it may be concluded that it has complied with each and every requirement set forth in the 'sixty-day' order. Evidence or argument that the requirements as established in such order were unnecessary or unreasonable, or that a reasonably adequate service can be provided irrespective of these requirements, may only be considered upon a rehearing by the commission of its 'sixty-day' order. Should the commission, after review, determine that its requirements were unreasonable, the provisions of the 'sixty-day' order can and would be modified. Should the commission fail to so modify its order after re-

hearing, the protestant has appropriate and adequate recourse by appeal to the Supreme Court.''

From the foregoing discussion it is clear that Morgan's failure to comply with Item (d) of the 60-day order leaves the public in Clermont County without adequate transport service, as delineated by the commission's order. Since granting of Motor Service's application was made dependent only upon a showing that Morgan continued in its failure to meet the public convenience and necessity, we see no reason to further delay implementation of adequate service.

The May 11, 1972, order of the commission is reversed, and the cause is remanded to the commission, with directions to grant Motor Service's application.

*Order reversed.*

O'NEILL, C. J., HERBERT, CORRIGAN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.