OPINION
{¶ 1} Appellant, Sugarhill Limited, appeals from a final judgment of the Geauga County Court of Common Pleas, finding in favor of appellee, Mary G. Brezo. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} Appellee and her late husband, John Brezo (collectively, "the Brezos"), owned a home located at 15321 Agler Road, in Parkman Township, Geauga County, Ohio, as well as 217 acres of abutting farmland. The home included two separate living quarters, each with separate entrances and exits.
 {¶ 3} The Brezos entered into a real estate option agreement ("the option contract") with Jerry Bishop ("Bishop") on October 28, 1994. This contract gave Bishop, or his assignee, the option, for one year, to purchase the farm for a purchase price of $651,000.[1] The option contract provided, inter alia:
 {¶ 4} "During the term of this Option as it may be extended, Optionee [Bishop], his agents and employees, shall have the right of access to the Property for the purpose of performing tests and inspections and surveying the property, all at Optionee's sole risk and expense.
 {¶ 5} "* * *
 {¶ 6} "Right to Lease. Upon the closing date of this transaction, Optionee agrees that Optioner [the Brezos] shall have the right to lease the residence located on the property and up to 5 acres surrounding that residence, with a minimum of 200 feet of frontage along Agler Road in front of such residence, for the duration of the lives of John A. Brezo and Mary G. Brezo. In consideration of such lease, Optionor agrees to pay for all utilities used or consumed at the residence by Optionor for the duration of such lease. During the term of such lease, Optionor shall continue to be responsible for insuring the residence and all personal property kept by Optionor in or about such residence. All other expenses with respect to the residence shall be paid for by Optionee."
 {¶ 7} This option contract also specified that the option period could be extended for one-year extensions provided that Bishop, or his assignee, paid additional consideration according to a given schedule.
 {¶ 8} On October 28, 1994, Bishop assigned his rights under the option contract to appellant, an Ohio limited liability company in which he, along with Don Hofstetter ("Hofstetter"), was a member.
 {¶ 9} An amendment to the original agreement was executed on April 19, 1995, and it was signed by the Brezos and Bishop.[2] The main purpose of the amendment was to outline procedures to be followed if the option was exercised and to also give Bishop the right to acquire, by option, ten acre parcels of the total tract.
 {¶ 10} The amendment provided, inter alia, that "[u]pon the execution of the Amendment, and as long as this option shall remain in effect, Optionee shall have the right to place `for sale' signs on the Property, excluding the portion of the Property which is subject to the lease forthe residence as referred to in Paragraph 14 of the Agreement." (Emphasis added.) According to the amendment, "[e]xcept as specifically provided herein, all other terms and provisions of the Agreement shall remain unmodified and in full force and effect."
 {¶ 11} The amendment was signed by the Brezos and Bishop. The amendment did not indicate that Bishop had assigned his rights under the original agreement to appellant or that Bishop was acting as an agent of appellant when signing the amendment.
 {¶ 12} The parties do not dispute that Bishop and/or appellant extended the option and then subsequently appellant exercised the option in June 2000. As of 2002, Hofstetter was the only owner of appellant, as he had purchased Bishop's interest in the company.
 {¶ 13} At the time of the option contract, appellee and her late husband occupied the downstairs section of the residence while her daughter and the daughter's family occupied the upstairs section. Since that time, appellee has continuously lived in the downstairs section except for four months each winter when she lives in Florida.
 {¶ 14} As for the upstairs section, at some time after the daughter's family vacated in 1996, appellee's son and his wife moved into that section. The son and his wife lived there for approximately eighteen months, between 2000 and 2001. Thereafter, the section was subleased to a Mr. and Mrs. Hostetler for about ten months. Thereafter, since October 2003, the upstairs had been subleased to Wade Warren. In lieu of rent, the subtenants paid for the electricity and gas for the entire house and to use the washer and dryer.
 {¶ 15} According to appellee, neither appellant, Bishop, nor Hofstetter ever objected to the subtenants. Appellee admitted that she never requested permission from Bishop, appellant, or Hofstetter before permitting these individuals to occupy the upstairs portion of the residence. She also never provided notice that she had subleased that section of the residence.
 {¶ 16} In February 2003, appellant requested that appellee enter into a written lease for the residence that would prohibit her from subletting a portion of the residence. Appellee refused. There also existed some dispute about the right of appellant, or its agents, to enter the residence upon occasion.
 {¶ 17} On April 7, 2003, appellant filed a complaint for declaratory judgment and injunctive relief asserting that it was entitled to a written lease containing customary and usual terms for residential property and restricting appellee from subleasing the premises and/or having other occupants; requesting an injunction prohibiting appellee from subleasing the residence to third parties; and requesting that appellee give it permission to inspect the residence and provide keys for access in emergency situations. Appellee timely answered, asserting various affirmative defenses including that appellant's claims were barred by the parol evidence rule and the doctrines of estoppel and laches.
 {¶ 18} Appellee also put forth a counterclaim, alleging that Hofstetter, as an agent of appellant, trespassed upon the residence in January 2003. Appellant answered the counterclaim.
 {¶ 19} Both parties filed pretrial briefs, and the matter proceeded to a bench trial on May 19, 2004. The trial court heard testimony from appellee, Lawrence Shibley ("Shibley"), and Hofstetter. Bishop, who initially entered into the option contract, assigned his rights to appellant, and who signed the amendment, was never involved in this matter and did not testify.
 {¶ 20} Appellee testified that part of the motivation for the clause permitting a lease that was contained in the option contract was that such a lease would enable the Brezos, or the surviving spouse, to have a place to live without having to move if the farm was sold. She indicated that there were no discussions as to whether she could sublease the premises.
 {¶ 21} Hofstetter testified that, after the option was exercised, he approached appellee and requested that she enter into a written lease. According to Hofstetter, "she wasn't interested in continuing to lease
there for much longer * * *." (Emphasis added.) It follows that, implicitly, Hofstetter, as an agent of appellant, admitted that there existed a lease.
 {¶ 22} Shibley, who was in the restaurant business and also owned approximately twenty residential rental properties, also testified. He had been in the business of buying and leasing real estate for twenty years in Cuyahoga and Geauga counties. However, Shibley admitted that he had never been involved with a lease where there was an option to buy farm land and a life estate was granted.
 {¶ 23} According to Shibley, he was familiar with the ordinary and customary terms in residential leases. He stated that it is not uncommon for residential leases to include a clause requiring the tenant to have permission from the landlord before subleasing the property. Shibley testified that such a term would be "customary." Shibley also indicated that, prior to 2002, he did not insert clauses prohibiting subleasing in his own rental agreements; he explained, "I would never even give it a thought that anybody would sublease a residential property to another party."
 {¶ 24} Both parties presented closing arguments. Appellant argued that, absent an express clause in the lease authorizing subleases, Ohio law prohibits a tenant from subleasing a property when the tenant's lease is for an indefinite time. Appellant argued that, because appellee essentially had a life estate, and the date of her death could not be ascertainable, the lease was for an indefinite period of time. To the contrary, appellee argued that the lease, extending until her death, was for a definite period of time. As a result, she argued that she had a valid lease of the home pursuant to the clause contained in option contract.
 {¶ 25} The trial judge issued findings of fact and conclusions of law on June 1, 2004. In relevant part, the trial judge stated:
 {¶ 26} "1. It is this Court's determination that Paragraph 14 of the option agreement in combination with the subsequent conduct of the parties created a lease between the parties. Paragraph 14 states that Optionor shall have the right to lease the residence and up to five acres of real property. Contrary to Plaintiff's assertions, the aforementioned language does not mean that the parties agree to enter into a written lease in the future. Rather, upon the closing of the option agreement, [the Brezos] had a lifetime lease of the residence and up to five acres of real property.
 {¶ 27} "2. The parties' conduct demonstrates that they intended a lease that commenced upon the closing of the option agreement, as opposed to entering into a future written lease. [The Brezos] appear to have met their obligation by continuing to pay for the utilities consumed during their tenancy. * * * The 1995 amendment to the option agreement supports the proposition that the parties had already entered into a lease agreement to that the amendments specifically refers to the Property which is subject of the lease.
 {¶ 28} "3. Ohio law permits subleases unless the lease specifically prohibits them. In this case, there is no language in Paragraph 14 or any other provision of the option agreement that restricts the right of Defendant to sublet the leased premises.
 {¶ 29} "4. Nothing in the agreement * * * requires that Defendant obtain Plaintiff's consent before the leased premises are sublet."
 {¶ 30} The trial court issued a judgment entry that same day, granting judgment in favor of appellee on appellant's complaint and in favor of appellant on appellee's counterclaim. In this judgment entry, the trial court also overruled appellant's motion seeking access to appellee's electrical service and water in order to provide electricity and water to the barn.
 {¶ 31} From this judgment, appellant appeals and sets forth the following assignment of error:
 {¶ 32} "[1.] The Trial Court erred in concluding a single paragraph in a Real Estate Purchase Option Agreement which afforded the seller a `right to lease' the subject property for life constituted the lease itself and also afforded the future tenant the right to sublease the property without the owner's consent."
 {¶ 33} When confronted with an issue about contract interpretation, the role of the trial court is to give effect to the intent of the parties to the agreement. Hamilton Ins. Services, Inc. v. Nationwide Ins.Cos., 86 Ohio St.3d 270, 273, 1999-Ohio-162. See, also, Preload, Inc. v.R.E. Schweitzer Constr. Co., 1st Dist. Nos. C-030182, C-030215, and C-030517, 2004-Ohio-2278, at ¶ 5. We review a trial court's application of law on a de novo basis. Nationwide Mut. Fire Ins. Co. v. Guman Bros.Farm, 73 Ohio St.3d 107, 108, 1995-Ohio-214; Ohio Historical Soc. v.Gen. Maintenance Eng. Co. (1989), 65 Ohio App.3d 139, 146. However, when a contract is ambiguous or susceptible to more than one reasonable interpretation, the trial court's interpretation should not be overturned on appeal absent a showing that the court abused its discretion. Ohio Historical Soc. at 146-147.
 {¶ 34} The trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proferred testimony."Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77. Accordingly, we must indulge every reasonable presumption in favor of the trial court's judgment and its underlying findings of fact, and if the evidence is susceptible to more than one interpretation, we must give deference to the trial court's credibility determinations. Seasons Coal
at 80.
 {¶ 35} Contractual terms are ambiguous if the meaning of the term is susceptible to more than one interpretation. United States Fid. andGuar. Co. v. St. Elizabeth Med. Ctr. (1998), 129 Ohio App.3d 45. "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language with a special meaning, will extrinsic evidence be considered in an effort to give effect to the parties' intentions." Shifrin v. Forest City Ent.,Inc., 64 Ohio St.3d 635, 1992-Ohio-28, syllabus. In such a situation, the trial court is empowered to look to the actions of the contracting parties to assist in ascertaining the meaning of their agreement. Abram Tracy, Inc. v. Smith (1993), 88 Ohio App.3d 253, 259. Again, we note that interpretation of an ambiguous term used in a contract is a question of fact and will not be reversed absent an abuse of discretion.Maines Paper Food Serv., Inc. v. Eanes (Sept. 28, 2000), 8th Dist. No. 77301, 2000 Ohio App. LEXIS 4480, at 6.
 {¶ 36} Turning to the instant matter, we note that the paragraph at issue, contained within the option contract, is susceptible to two reasonable interpretations. One reasonable interpretation of the paragraph is that upon execution of the option, the Brezos and Bishop, or Bishop's assignee, could enter into a lifetime lease agreement permitting the Brezos to remain in the residence. However, another reasonable interpretation is that the paragraph automatically created a lifetime lease upon a contingency, that contingency being the execution of the option.
 {¶ 37} Because the paragraph is ambiguous, interpretation of the contract turns upon a question of fact. To ascertain the meaning of the contract, the trial court was empowered to examine the actions of the parties and to assess their credibility when ascertaining the meaning of their agreement. Further, as we noted, we must give deference to the court's credibility determinations. Seasons Coal at 80.
 {¶ 38} The trial court stated, "[t]he parties' conduct demonstrates that they intended a lease that commenced upon the closing of the option agreement, as opposed to entering into a future written lease." Further, as the trial court aptly noted, "[The Brezos] appear to have met their obligation by continuing to pay for the utilities consumed during their tenancy. * * * The 1995 amendment to the option agreement supports the proposition that the parties had already entered into a lease agreement to that the amendments specifically refers to the Property which is subject of the lease." (Emphasis added.) We cannot conclude that the trial court abused its discretion when interpreting the contract in this manner. As such, we conclude that the paragraph in the option contract created a valid lease for the duration of the life of appellee or her husband, whoever would live longer, contingent only upon the execution of the option by Bishop or his assignee.
 {¶ 39} Such an agreement was in accord with Ohio law. Lifetime leases are recognized by Ohio law. Allman v. Simmers (Nov. 16, 1999), 5th Dist. No. 1999AP030014, 1999 Ohio App. LEXIS 5502, at 5. Further, contrary to what appellant would like us to believe, the lease was for a definite term.
 {¶ 40} A lease for a definite term covers a period of time after which there is a reversion of interest to the owner of the property. TheRalston Car Steel Co. v. Ralston (1925), 112 Ohio St. 306, 318. To the contrary, in a perpetual lease, for an indefinite period of time, the interest may never revert to the owner of the property. Id. To clarify, "there is a clear distinction between a 99-year lease which is renewable forever and a 99-year lease which is renewable for two such terms * * *."Carney v. Cleveland City School Dist. Pub. Library (1959), 169 Ohio St. 65,69-70. The former is comparable to a freehold estate, while the latter is a valid leasehold for a definite period of time. Id.; Ralston at 318.
 {¶ 41} The lease in the instant matter was for the life of the surviving spouse. Although a precise date cannot be ascertained, the death of the surviving spouse is certain. Upon this certain death, the leasehold interest in the residence will revert to appellant as the property owner. The lease was not indefinite or renewable forever. As such, following the logic of Ralston and Carney, the lease was for a definite term.
 {¶ 42} Ordinarily, when a tenancy is at will or for an indefinite term, the lessee cannot sublease the premises. Motor Serv. Co. v. Pub.Utilities Comm. (1974), 37 Ohio St.2d 1, 6. However, when a lease is of a definite term, absent contrary language, the lessee may sublease the property. Fleming v. Rusch Properties (March 1, 2001), 10th Dist. No. 00AP-595, 2001 Ohio App. LEXIS 738, at 6. See, also, White, Ohio Landlord Tenant Law (2001), Paragraph 11.12, at 257. As such, because the agreement in this matter did not contain contrary language, appellee was entitled to sublease the property. We will not mandate that the parties enter into a written lease prohibiting appellee from subleasing the property.
 {¶ 43} Appellant's sole assignment of error is without merit. We hereby affirm the judgment of the trial court.
Ford, P.J., O'Neill, J., concur.
[1] The parties stipulated that Bishop had the right to assign his rights under the option.
[2] John Brezo passed away in 1995.